# CASES DETERMINED

## *August Term, 1885.*

---

WILLIAMS, Appellant, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*September 4 — September 22, 1885.*

*Railroads: Signals at highway crossing: Contributory negligence.*

1. Though the whistle is not blown nor the bell rung on a locomotive before crossing a highway, as required by statute, the railroad company is not liable for an injury resulting from a collision at such crossing if the negligence of the person injured contributed thereto.
2. The evidence in this case (stated in the opinion) is *held* to show conclusively that if the driver of the plaintiff's team had exercised ordinary vigilance while approaching a railroad crossing he would have discovered the locomotive by which such team was struck, in time to have avoided the collision.

APPEAL from the Circuit Court for *Columbia* County. Action to recover damages for injuries to the team and wagon of the plaintiff, caused by an engine and caboose of the defendant running into them as they were crossing the railroad track upon a highway near the city of Columbus. The facts are stated in the opinion. At the close of the plaintiff's testimony the circuit court granted a nonsuit, and from the judgment entered accordingly the plaintiff appealed.

For the appellant there was a brief by *J. C. McKenney* and *J. J. Sutton,* and oral argument by *J. W. Wagner* and *Mr. Sutton.* To the point that when the company neglects

to give the customary signals, want of ordinary care cannot be imputed to a person because he fails to look up and down just before crossing the track, they cited *Ernst v. H. R. R. Co.* 39 N. Y. 61, and 35 id. 9; *Beisiegel v. N. Y. C. R. Co.* 34 id. 622; *Mackay v. N. Y. C. R. Co.* 35 id. 75; *Continental Imp. Co. v. Stead,* 95 U. S. 161.

For the respondent the cause was submitted on the brief of *John W. Cary,* attorney, and *Burton Hanson,* of counsel. To the point that it was the duty of the driver to have looked in the direction of the approaching train, when, by so doing, he could have seen it in time to have avoided it, and that, failing to look, he was guilty of negligence, they cited *Rothe v. M. & St. P. R. Co.* 21 Wis. 256; *Langhoff v. M. & P. du C. R. Co.* 23 id. 43; *Delaney v. M. & St. P. R. Co.* 33 id. 67; *Haas v. C. & N. W. R. Co.* 41 id. 44; *Kearney v. C., M. & St. P. R. Co.* 47 id. 145; *Steves v. O. & S. R. Co.* 18 N. Y. 422; *Ernst v. H. R. R. Co.* 39 id. 61; *Havens v. Erie R. Co.* 41 id. 296; *Harty v. Cent. R. Co.* 42 id. 468; *Gorton v. Erie R. Co.* 45 id. 660; *Mitchell v. N. Y. C. & H. R. R. Co.* 64 id. 655; *Salter v. U. & B. R. Co.* 75 id. 273; *Cordell v. N. Y. C. & H. R. R. Co.* id. 330; *Connelly v. N. Y. C. & H. R. R. Co.* 88 id. 346; *Tolman v. S. B. & N. Y. Co.* 98 id. 198; *Butterfield v. Western R. Corp.* 10 Allen, 532; *Allyn v. B. & A. R. Co.* 105 Mass. 77; *Hinckley v. Cape Cod R. Co.* 120 id. 257; *Wright v. B. & M. R. Co.* 129 id. 440; *C. & R. I. R. Co. v. Still,* 19 Ill. 499; *Ill. Cent. R. Co. v. Buckner,* 28 id. 299; *T., P. & W. R. Co. v. Riley,* 47 id. 514; *St. L., A. & T. H. R. Co. v. Manly,* 58 id. 300; *C. & A. R. Co. v. Jacobs,* 63 id. 178; *C., R. I. & P. R. Co. v. Bell,* 70 id. 102; *C., B. & Q. R. Co. v. Demerell,* 81 id. 450; *Benton v. R. Co. of Iowa,* 42 Iowa, 192; *Schaefert v. C. & N. W. R. Co.* 62 id. 624; *Donaldson v. M. & St. P. R. Co.* 21 Minn. 293; *Brown v. M. & St. P. R. Co.* 22 id. 165; *Abbett v. C., M. & St. P. R. Co.* 30 id. 482; *N. Penn. R. Co. v. Heileman,* 49 Pa. St. 60; *Hanover R. Co. v. Coyle,* 55

Williams vs. The Chicago, Milwaukee & St. Paul R. Co.

id. 396; *P., Ft. W. & C. R. Co. v. Dunn*, 56 id. 280; *Penn. R. Co. v. Beale*, 73 id. 504; *Scofield v. C., M. & St. P. R. Co.* 8 Fed. Rep. 488; 114 U. S. 615; *Continental Imp. Co. v. Stead*, 95 U. S. 164; *Railway Co. v. Houston*, id. 697.

CASSODAY, J.   The following facts are conclusively established by the evidence: At the place of the injury the railway ran east and west, and the public highway ran across it north and south. The plaintiff's team, driven by his hired man, approached the crossing from the north. The engine, with a caboose attached, approached the crossing from the west. Two men rode with the driver, sitting on dump-boards lying flat on the bolsters of the wagon, with their feet hanging down, and their faces towards the east and their backs towards the west. When they got opposite a house on the west side of the highway, at a point about twenty-five rods north of the crossing, one of the men got off, and after walking about five rods west towards the house saw the engine and caboose coming from the west and about forty-five rods distant from the crossing. Between the point where the man got off and a point about eighteen rods north of the crossing there were a few trees on the west side of the highway; but from that point to the crossing, a distance of about eighteen rods, there was no house nor tree, nor anything to obstruct the view, except the deep cut through which the track ran. This cut was about ten feet deep in the deepest place, and from that point sloped each way, so that at a distance of about sixty feet each way therefrom it was only about six or seven feet deep. The cut wholly disappeared several rods west of the crossing, so that a person in the highway 100 feet north of the crossing could see the track for 100 feet west of the crossing, and could see a train or smoke-stack of a train several rods further west. After the man got off at the point twenty-five rods north of the crossing, the team, with

the driver and the other man sitting on the dump-boards with their faces towards the east, talking, moved on south towards the crossing; and when they reached the last tree, about eighteen rods north of the crossing, the driver looked over his right shoulder to the west, but saw no train. The horses walked from that point to the crossing, but neither the driver nor the man with him looked again to the westward until the engine was close on the cattle-guard and the horses nearly on the railroad track. While passing over these eighteen rods there was a considerable portion of the distance that a coming train from the west could have been seen, if within thirty rods of the crossing, and for the entire distance, except perhaps at the deepest point of the cut, the top of the smoke-stack could have been seen, if anywhere within thirty rods of the crossing. The horses were a quiet team, and would have stopped at any time before reaching the track had the driver said "whoa." The engine was run unusually fast, without blowing the whistle, ringing the bill, or giving any other signal, until it reached the cattle-guards.

The failure to blow the whistle and ring the bell before crossing the highway was such statutory negligence as would, in the absence of contributory negligence on the part of the driver, make the defendant liable in this action. Sec. 1809, R. S.; *Bower v. C., M. & St. P. R. Co.* 61 Wis. 457; *Ransom v. C., St. P., M. & O. R. Co.* 62 Wis. 178; *Hoye v. C. & N. W. R. Co.* 62 Wis. 668. In *Bower v. C., M. & St. P. R. Co., supra*, it was, in effect, held that if the driver could have prevented the accident by using his eyes in looking, and his ears in hearing, then there could be no recovery. But the fact is conclusively established by the evidence that had the driver, while approaching the crossing, exercised ordinary vigilance in looking in the direction of the coming engine, he would have discovered it in time to have stopped the team before reaching the railroad track, and thus pre-

vented the injury. Failing so to do, he was clearly guilty of contributory negligence, under all the authorities. In support of this, the respondent's counsel have cited so many cases that we do not feel called upon to cite any.

*By the Court.*— The judgment of the circuit court is affirmed.

