[Decided February 4, 1887.]

# NORTHERN PACIFIC RAILROAD COMPANY *v.* JAMES HOLMES.

1. JUROR — VOIR DIRE — TALESMAN — BIAS. — In impaneling a jury, it is proper in the trial of a challenge for actual bias to interrogate the jurors as to their relations to the attorneys of the parties, and particularly whether they sustain the relation of clients. It is also proper to pursue this line of inquiry when no such issue of fact on a challenge is pending, in the endeavor to become acquainted with a talesman or other juror respecting whose antecedents there has been no previous fair means of information.

2. CONTRIBUTORY NEGLIGENCE — RAILROAD CROSSING — NONSUIT. — In an action against a railroad company to recover for injuries received at a crossing, the plaintiff's testimony showed that he was driving two horses which were gentle and tractable, on a street which crossed the railroad at nearly right angles, in defendant's switch-yard; that north of the main track, five or six feet from and parellel with it, was a side-track of considerable length; that plaintiff approached the crossing on the north side, and when about sixty feet away a train (not a regular one) passed rapidly and went out of sight behind some box cars that were standing on the side-track to the east of the street and partly obstructing it; that eastward of the street on the north side was a depot, with a platform on its west; that the crossing was planked, the planking extending along the end of the depot platform the width of the street, and about thirty feet from the main track; that just before going on to the planking he slowed up to a walk; that the yard-master was at a switch on the opposite side of the main track; that as soon as the train passed two wagons started from the opposite side where they had been waiting, and crossed, passing him, all being on the planking at once; that without stopping or speaking to any one, he kept his horses going at a walk, not hearing any bell, whistle, or other noise of a train, though listening, until just as he got by the end of the box cars he saw the train close on him; that he whipped up his horses on the main track, and as they sprang forward he heard a cracking noise, and knew no more until in the doctor's hands. It further appeared that plaintiff had lived in the town some time, and had worked for the railroad at its car-shops nearly a year; was well acquainted with the crossing, and knew that they switched cars there; that he was familiar with the switch-yard, and knew the location of the switches. *Held*, that under all the circumstances he was guilty of such culpable and contributory negligence as precluded his recovery, and a nonsuit should have been ordered. LANGFORD, J., dissenting.

ERROR to the District Court holding terms at Spokane Falls. Fourth District.

Defendant in error in his complaint alleged in substance the erection and maintenance, by the railroad company, of a freight-depot adjoining a public street in the town of Sprague, and the leaving by the railroad company of freight or box cars standing on a side-track adjacent to said depot and extending to the crossing of said public street, and the backing of another train of cars rapidly and negligently over the crossing of said public street, while his view was obstructed by said depot and box cars, without giving any warning whatever of the approach of said train, and while he was endeavoring to cross said track with his team, whereby a collision occurred, inflicting the damages complained of. The railroad company in its answer denied any negligence and damages, and affirmatively pleaded contributory negligence on the part of the defendant in error in failing to "stop, look, and listen." On the trial the court instructed and directed the attorney for the defendant not to interrogate any of the jurors as to their relation to plaintiff's counsel, and especially whether any of said jurors were clients of plaintiff's attorneys. At the close of plaintiff's testimony the defendant moved for a nonsuit, on the ground that it appeared by plaintiff's testimony that he had been guilty of contributory negligence and was not entitled to recover, which motion was denied by the court below. The substance of plaintiff's testimony appears in the opinion of the court. Verdict and judgment for plaintiff, and the defendant appealed.

*Messrs. McNaught, Ferry, McNaught, & Mitchell,* and *Messrs. Hyde & Turner,* for the Plaintiff in Error.

If a juror occupied towards an attorney of the adverse party the relation of client, it might, with other facts, establish actual bias, and for that reason the party is entitled to such information as will enable him to exercise his peremptory challenge intelligently. (Thompson and Merriam on Juries, sec. 243, p. 255; *Watson* v. *Whit-*

*ney,* 23 Cal. 375; Abbott's Trial Brief, 14–19; *Melson* v. *Dickson,* 36 Am. Rep. 128; *Mechanics' and Farmers' Bank* v. *Smith,* 19 Johns. 115.) It was the duty of the plaintiff to approach the crossing with care and caution sufficient to avoid the collision with a switch-train running *at the usual rate.* (*Continental Improvement Co.* v. *Stead,* 95 U. S. 161; *Railroad Co.* v. *Houston,* 95 U. S. 697; *Schofield* v. *Chicago etc. R. R. Co.,* 114 U. S. 615.) It is the duty of those desiring to make the crossing to use their powers of hearing and vision to ascertain whether or not there is liable to be a passing locomotive or train, and if so, to stop until the danger is past. If there is no obstruction to either sound or vision, then the passer need not stop, but must use both faculties; but if there be such obstruction, then it is his duty to stop, and both look and listen; and if he neglects to use these precautions, and a collision takes place, compensation cannot be given. (*Schofield* v. *Chicago etc. R. R. Co.,* 2 McCrary, 268.) It is the duty of travelers, before crossing the track of a railroad where the view is obstructed, to stop and listen for the approaching train before attempting to cross the rail; and if he fail to observe this precaution, he forfeits all right to recover for injuries received by the collision. (*Maryland C. R. R. Co.* v. *Newborn,* 19 Am. & Eng. R. R. Cas. 261; *Pennsylvania R. R. Co.* v. *State,* 61 Md. 108.) The failure on the part of the traveler crossing a railroad track at grade to stop and look and listen is not merely evidence of negligence, but negligence *per se,* and a question for the court. (*Reading etc. R. R. Co.* v. *Richter,* 103 Pa. St. 425; *Bellfontaine R. R. Co.* v. *Hunter,* 5 Am. Rep. 214; *Chicago etc. R. R.* v. *Lee,* 78 Ill. 454; 2 Rorer on Railroads, 1067; *Rothe* v. *Milwaukee etc. R. R. Co.,* 21 Wis.; *Haines* v. *Illinois Cent. R. R. Co.,* 41 Iowa, 231; *Morris and Essex R. R. Co.* v. *Hoslan,* 33 N. J. L. 147; *Monroe* v. *Chicago etc. R. R. Co.,* 19 Am. & Eng. R. R. Cas. 362.) In attempting to cross, the traveler must listen for signals, notice signs put up as warn-

ings, and look attentively up and down the track. A multitude of decisions of all the courts enforce this reasonable rule. *He must even come to a halt for that purpose.* (Beach on Contributory Negligence, 192; *Wilds* v. *Hudson River R. R. Co.*, 29 N. Y. 315; *Schulze* v. *Pennsylvania R. R. Co.*, 5 Reporter, 376; Weeks's Damnum Absque Injuria, p. 273, sec. 132; Field on Damages, 166; *Illinois Cent. R. R. Co.* v. *Hutchinson*, 47 Ill. 408; *H. & T. C. R. R. Co.* v. *Smith*, 52 Tex. 178; *Railroad Co.* v. *Beale*, 6 Am. Railw. Rep. 158; *Lake Shore R. R. Co.* v. *Miller*, 5 Am. Railw. Rep. 488; *Salter* v. *Utica & B. R. R. Co.*, 75 N. Y. 278; *Pennsylvania R. R. Co.* v. *Righter*, 42 N. J. L. 180.)

*Messrs. Andrews* and *Jones*, for the Defendant in Error.

Examination of jurors in their *voir dire* is largely in the discretion of the court unless a challenge for cause is interposed. (Thompson and Merriam on Juries, sec. 240, and notes 3, 4.) If the plaintiff was not bound to anticipate the *return* of the colliding train at the time it did return, he was not guilty of negligence in not looking for it. If the plaintiff was guilty of negligence in not exercising the proper amount of care in looking for some other train,—which we deny,—such negligence will not avail the plaintiff in error. (*Kennadye* v. *Pacific R. R. Co.*, 45 Mo. 225; *Harlan* v. *St. Louis etc. R. R. Co.*, 64 Mo. 486.) Even after Holmes was well advanced toward the crossing, the collision could have been avoided if the defendants' servants had exercised due care, before starting the train backward, to see that the crossing was clear. But the testimony shows beyond contradiction that they exercised no care whatever either when starting the train backward or pushing it over the crossing. Hence if the plaintiff had been negligent such negligence was not the proximate cause of the injury. (*Radley* v. *London and Northwestern R'y Co.*, 2 Thompson on Negligence, 1108, 1111, 1119, 1152; *Fernan-*

*dez* v. *Sacramento City R'y Co.,* 52 Cal. 49; *Bunting* v. *Central Pacific R. R. Co.,* 16 Nev. 277; *Hatfield* v. *Chicago etc. R. R. Co., Romick* v. *Chicago etc. R. R. Co.,* 17 N. W. Rep. 458; *Pennsylvania R. R. Co.* v. *Barnett,* 59 Pa. St. 295; *Elliot* v. *Green Bay etc. R. R. Co.,* 48 Wis. 606; *Chicago etc. R. R. Co.* v. *Miller,* 46 Mich. 532; *Thomas* v. *Delaware etc. R. R. Co.,* 19 Blatchf. 533; *Kelley* v. *St. Paul etc. R. R. Co.,* 29 Minn. 1; *McWilliams* v. *Detroit Central Mill Co.,* 31 Mich. 274; *Robinson* v. *Western Pacific R. R. Co.,* 48 Cal. 410; *Bohan* v. *Milwaukee etc. R. R. Co.,* 58 Wis. 30; *Palmer* v. *Detroit etc. R. R. Co.,* 22 N. W. Rep. 88.) The plaintiff had a right to presume that the defendants' agents would have done their duty, and he cannot be held guilty of contributory negligence for not having anticipated the negligence of the defendant. (*Cordell* v. *New York Cent. R. R. Co.,* 70 N. Y. 119; *Craig* v. *New York etc. R. R. Co.,* 118 Mass. 431; *Tabor* v. *Missouri etc. R. R. Co.,* 46 Mo. 353.) It is not negligence for a person approaching such a crossing under such circumstances to fail to stop before venturing onto the crossing, in order to look and listen. (*Continental Imp. Co.* v. *Stead,* 95 U. S. 165; *Richardson* v. *New York Cent. R. R. Co.,* 35 N. Y. 75; *Davis* v. *New York Cent. R. R. Co.,* 47 N. Y. 400; *Craig* v. *New York etc. R. R. Co.,* 118 Mass. 431; *Artz* v. *Chicago etc. R. R. Co.,* 44 Iowa, 284; *North Pennsylvania R. R. Co.* v. *Heilman,* 49 Pa. St. 60; *Pittsburg etc. R. R. Co.* v. *Wright,* 80 Ind. 236; *Lavering* v. *Chicago etc. R. R. Co.,* 56 Iowa, 689; *Shaber* v. *St. Paul etc. R. R. Co.,* 28 Minn. 103.) Being compelled as plaintiff was to make an instant choice as to what he would do, his mistake — if he made one — cannot be held to be contributory negligence. (*Twomley* v. *Central Pacific etc. R. R. Co.,* 69 N. Y. 158; *Bunting* v. *Central Pacific R. R. Co.,* 14 Nev. 350; *Dyer* v. *Erie R'y Co.,* 71 N. Y. 228; *Pennsylvania R'y Co.* v. *Werner,* 8 Reporter, 60; *Indianapolis R. R. Co.* v. *Wright,* 22 Ind. 376.) Whether or not a plaintiff in a given case is guilty of such negligence

as to bar a recovery is a question which as a rule should be submitted to the jury.  This case is not an exception to that rule.  (*Walsh* v. *Oregon R'y & Nav. Co.*, 10 Or. 250; *Gaymor* v. *Old Colony etc. R. R. Co.*, 100 Mass. 210; *Railroad Co.* v. *Stout*, 17 Wall. 663; *Detroit etc. R. R. Co.* v. *Van Steinberger*, 17 Mich. 112; *Whitton* v. *Railway Co.*, 13 Wall. 290; Redfield on Law of Railways, 570, 571, notes 8, 9; *Wheelock* v. *Boston etc. R'y Co.*, 105 Mass. 203; *Artz* v. *Chicago etc. R'y Co.*, 44 Iowa, 284; *Marietta etc. R'y Co.* v. *Picksley*, 24 Ohio St. 654; *Westchester etc. R'y Co.* v. *McElwee*, 67 Pa. St. 311; *Copley* v. *New Haven etc. R'y Co.*, 136 Mass. 6; *Laughoff* v. *Milwaukee etc. R. R. Co.*, 19 Wis. 498; *Dolan* v. *Delaware etc. R'y Co.*, 71 N. Y. 285.)

Mr. Chief Justice GREENE delivered the opinion of the court.

Plaintiff in error was sued by the defendant in error to recover damages for injuries suffered in a collision between the team of the latter and the railway train of the former.  The action resulted in a verdict against the railway company, and this writ of error is taken from the judgment rendered thereon.

One of the errors assigned is the refusal of the district judge to allow the counsel for the company to interrogate the jurors, while they were being selected, as to their relations to the plaintiff's attorneys, and particularly whether they were clients of plaintiff's attorneys.  It appears that the jurors were being examined in their *voir dire*, as customary in our courts, and that no issue of fact on a challenge made was pending.  It does not appear but that the jurors whom it was proposed to interrogate were members of the regular panel, respecting whose relations there had been ample opportunity for investigation before they were called into the box. We regard the line of inquiry proposed as a proper one to be pursued in the trial of a challenge for actual bias,

or in the endeavor to become acquainted with a talesman or other juror, respecting whose antecedents there has been no previous fair means of information, but we do not perceive that in the instance before us the judge departed from a legitimate exercise of his discretion. After the plaintiff's evidence was all in, the defendant moved for a nonsuit, and the most interesting and main question submitted for decision in this case is upon this motion for nonsuit, whether any contributory negligence of the plaintiff appears as matter of law from his evidence. Unless he was free from such negligence, he could not rightly recover. (*Continental Improvement Co.* v. *Stead*, 95 U. S. 161, 164.) Negligence of the railway company's employees could be no excuse for his negligence. (*Railroad Co.* v. *Houston*, 95 U. S. 697, 702.) If, at the close of his evidence his negligence contributing to his injury, so clearly appeared, that in case the cause were submitted to the jury without further evidence, the court would be warranted in setting aside a verdict in his favor, then the duty of the court was to grant the defendant's motion for a nonsuit. (2 Rorer on Railroads, 1061; *Wilds* v. *Hudson R. R. Co.*, 29 N. Y. 315; *W. P. R. R. Co.* v. *Adams*, 19 Am. & Eng. R. R. Cas. 379 (Kan.); *Merchants' Bank* v. *State Bank*, 10 Wall. 637; *Oscanyan* v. *W. R. Dumas Co.*, 103 U. S. 261.)

When the plaintiff closed his evidence, and the motion for nonsuit was made, it appeared from his own testimony, under the most favorable interpretations of it for him, and without any qualification, that the injury of which he complains was inflicted upon him by a switch-train of defendants' cars while he, in a buggy drawn by two horses, gentle and manageable, which he was driving, was crossing the main railroad track of the defendant at a street crossing, upon the track grade, in defendants' switch-yard, in the town of Sprague; that he was crossing the track from east to west, along a street at right angles, or nearly so, to the main track; that north of the

main track, five or six feet from it, and parallel to it, was a side-track, running east and west a considerable distance each way; that on the side-track, overlapping five or six feet upon the street, and extending eastward, stood a line of several box cars; that a little to the eastward of the street, and along the north side of the side-track, was a depot with a platform to the west of it; that the crossing was planked, and that the planking extended northward along the end of the depot platform, and for the width of the street, to a distance of twenty-five or thirty feet from the main track; that the plaintiff approached the main track with his horses trotting at the rate of five or six miles an hour, and when about sixty feet from the track saw the train, consisting of two box cars, two flat cars, and a caboose, with a locomotive in the midst of them, and which did not look to him like a regular train, pass rapidly eastward over the crossing, and out of sight behind the box cars standing on the side-track; that after this, owing to the position of the box cars, he saw and could see no more of the train until a few seconds before the collision, but he saw the yard-master standing at a switch on the opposite side of the main track; that he continued driving at a trot till his horses came to the planking, where there was a little rise, to meet which he slowed them to a walk; that as soon as the train passed eastward, two wagons, each drawn by two horses, one team close behind the other, started from the opposite side of the main track, where they had been waiting, and crossed the track towards him, keeping together, and passed him as his team went over the planking, all six of the horses being on the planking at the same time; that after reaching the planking, he kept his horses moving at a walk, without stopping, and without speaking to any one, and without hearing any whistle or bell or other noise of the train, though listening, until suddenly, as he got by the end of the standing box cars, he discovered the train close upon

him, and whipped up his horses on the main track, and as they sprang forward, heard a cracking, and knew no more till the doctor was working at his head.

It further appeared from his testimony that prior to his injury he had resided in the town of Sprague eighteen months, had worked for the railway company in its car-shops there nearly a year, was familiar with the crossing, had frequently crossed it going to and from his work, and was familiar also with the switch-yard and the location of the switches therein. We think that this statement of facts, substantially as narrated by the plaintiff himself, clearly shows that he was guilty of culpable and contributory negligence, and that his case is not to be distinguished in principle from the multitude of cases in which the highest courts of most of the states, and the Supreme Court of the United States, have held, under analogous circumstances, the existence of contributory negligence to be a question of law for the court, and not one of fact for the jury. (Beach on Contributory Negligence, sec. 63; *Chicago etc. R. R.* v. *Lee*, 68 Ill. 578, 78 Ill. 454; *Williams* v. *Railroad Co.*, 64 Wis. 1; *Fleming* v. *Western Pacific R. R. Co.*, 49 Cal. 253; *Salter* v. *Railroad Co.*, 75 N. Y. 278; *Railroad Co.* v. *Depew*, 40 Ohio St. 121; *Haas* v. *Cedar Rapids etc. R. R. Co.*, 47 Mich. 401; *Zimmerman* v. *Hannibal etc. R. R. Co.*, 2 Am. & Eng. R. R. Cas. 191 (Mo.); *Railroad Co.* v. *Ritchie*, 102 Pa. St. 425; *Railroad Co.* v. *Hunter*, 5 Am. Rep. 214 (Ind.); *B. & O. R. R. Co.* v. *Hobbs*, 19 Am. & Eng. R. R. Cas. 337 (Md.); *Tucker* v. *Duncan*, 6 Am. & Eng. R. R. Cas. 268 (U. S. Cir. Ct. Miss.); *Schofield* v. *Chicago etc. R. R. Co.*, 114 U. S. 615; *Kennedy* v. *Chicago etc. R'y Co.*, Sup. Ct. Iowa, Apr. 1886, 27 N. W. Rep. 743.) Plaintiff's danger was greater, and called for greater caution, by reason of the interruption of his view. (*Chase* v. *Maine etc. R'y Co.*, 5 Atl. Rep. 771; *Schofield* v. *Chicago etc. R. R. Co.*, 2 McCrary, 268; *Tucker* v. *Duncan, supra.*) If his view had not been obstructed, his duty would have been to look and see where the train

was, and what it was about, and if he did not he would not have been entitled to damages if injured. (Beach on Contributory Negligence, *supra,* and cases cited.) As his view was obstructed, he was in duty bound to do the nearest equivalent thing reasonably within his power, and likely to occur to a man of ordinary prudence so circumstanced, use the eyes of others who could see, by inquiring of them, or listen the more intently and with greater precaution, using such reasonable and obvious means of making listening effective as would occur to an ordinary man. It would have been a reasonable, prudent, and obvious thing for him to have inquired of either of the drivers of the two teams he met, or of the yard-master, whether it was safe for him to venture to cross, or whether the train was coming. It would have been an obvious and prudent and reasonable thing for him to have waited till the transient noise-of horse-hoofs and wagons on the planking had subsided, or at least to have stopped his own team and silenced his part of the noise so that he could listen to advantage. We are confident that an ordinarily intelligent and prudent man would have done one or the other or all of these things, and that if the plaintiff had been thus careful, he would not have been hurt. The noise on the planking was one which he knew he was helping to make, which he must have known would tend to prevent his hearing the train, and which was operating to prevent his hearing it just as the standing box cars were to prevent his seeing it. It was not some distant noise, recognizable as of no special significance, and for which the rumbling of the train might, notwithstanding ordinary care, be mistaken; nor was it a continuing noise, beyond his control, like the din of a factory; but it was a noise close to him, created in part by himself, and from which a few seconds of patience would wholly relieve him. If, as he approached the track, he had taken the precaution to listen as he ought, and had heard nothing, or to have inquired about

the train, and had been answered untruly or not at all, his case would have been a very different one from what it is, and then might have consisted with a verdict in his favor. But such is not his case. His injuries are proved out of his mouth to be due largely or wholly to his own gross imprudence in not stopping and listening, or in not otherwise, up to the limit of ordinary good sense, making use of his wits to ascertain the whereabouts and attitude of the hidden train.

The rule illustrated by the array of cases above cited, and requiring a traveler before trying to cross a railroad to look and listen attentively for a passing train, and if necessary for the purpose stop, is not a rule in favor of diminished liability in cases of collisions, but rather the contrary. It is a necessary and wholesome rule in favor of human life. There are human lives on railroad trains as well as in wagons. These lives must be preserved by just rules of law. One living in the vicinity of a railroad at this day must be presumed to be well aware of the terrible destructive energy active in a locomotive or stored up in a moving train. If such a person undertakes to drive a team across the railway, he must be presumed to know that he is going into a situation of great possible danger, and that a collision with his team is liable not only to kill him, but to derail a train and kill others. Should, through his negligence in crossing the track, an injury happen to an innocent passenger on the train, even though negligence of the employees of the railway company should have contributed to the injury, he or his estate would be liable to that passenger for full compensatory damages. If guilty of such negligence as would render him liable to an injured passenger, he would be guilty of such contributory negligence to any injury suffered by himself as would preclude his own recovery of any damages from the railway company.

Now, suppose a change in the case before the court.

Suppose the collision had happened when and where it did, and the employees of the railway company were in fact not at all to blame; suppose, further, that the plaintiff being a very rich man, had driven on the track just as he did, with no more and no less care than he actually, according to his own account, exercised, and the caboose had been derailed and a brakeman crippled for life, and that the brakeman seeing a good prospect of collecting a judgment if he could get one, sued the plaintiff, and that the case before the court and jury, upon evidence displaying all these facts, was between the brakeman as plaintiff, and this plaintiff as defendant, and the question was, whether the latter had been guilty of negligence entitling the brakeman to compensation;—there can, we think, be no doubt but what the brakeman would be held entitled to recover. And why? Because Mr. Holmes had not taken care enough of his own body? No; but because he had not, under the circumstances surrounding him, used that care and caution which the public in its own interest and in the interest of every member of it has a right to demand, that a man so circumstanced shall exhibit. But if the plaintiff, with the light of justice thus reversed upon him, would have been deemed negligent and causative of and responsible for consequences, then in his position, amid the realities of this case, he was and must be held guilty of contributory negligence. But while we thus condemn his conduct, and say it bars his recovery, we are disposed to think the jury were fully justified in finding very reprehensible negligence in the employees of the railway company.

The box cars, it would seem, should not have been left standing where they were, partly obstructing the crossing and largely obstructing the view. The fact that they were there cast upon the employees of the company a greater burden of caution. The locomotive bell, if rung at all, was not rung as under the circumstances

it should have been, and there was no efficient lookout to serve the blind end of the train. Had Holmes been killed, there can be little doubt that one or more of the employees would have been indictable for manslaughter. It would seem that our criminal law is defective in not providing punishment for what might be termed a " negligent assault." Were such a crime created, a temptation would be removed from juries who love justice to seek to arrive at it by punishing what should be crime through the medium of a civil verdict.

As our opinion on the question of nonsuit is decisive of the case, we do not think it necessary to pass on the other points made in the brief of counsel for plaintiff in error.

Let the judgment of the District Court be reversed, and the cause remanded, with directions to grant the defendant's motion for a nonsuit.

HOYT, J., concurred.

Mr. Justice LANGFORD, dissenting:—

In this case, I dissent from nearly every reason, and entirely from the conclusions, of my learned brothers. I shall use little of my own reasoning, and less of my own language, as the foundations of my conclusions; but shall be content to follow the decisions of the United States Supreme Court.

The sole question is, whether the court erred in submitting the case to the jury instead of granting a peremptory nonsuit. It is therefore admitted that the facts are as stated in the plaintiff's evidence, which is fairly stated by my brothers, but which I will restate in order that the statement of other cases decided by the Supreme Court of the United States may be more easily compared.

The place where the accident occurred was at a crossing in the city of Sprague; there were two railway tracks

nearly parallel, about five feet apart. The wagon-road crossed these tracks at nearly right angles. The plaintiff, coming from the north upon this wagon-road, attempted to cross the track. As he approached the track he saw a freight train pass east and go out of his sight. His sight was obstructed to the west by the buildings and cars of the defendant, so that it was impossible for him to see the track easterly until his horses were on the track where the train had just passed up. The southerly line of the railroad track, from the wagon-road east, was visible for some distance, and wagons in the road on that side, as soon as the train passed east as aforesaid, started in the wagon-road across the track, and the yard-master of defendant was there. It was usual for the train to switch at this place, and when the train was moving to ring the bell.

The plaintiff, as he approached the crossing, being well acquainted with the situation and the topography, and the custom of defendant to ring a bell when the cars were moving, and having seen the train pass east out of his sight, and knowing that the defendant's yard-master and the teams meeting him could see east from where they were, and seeing those crossing, he listening and hearing nothing, attempted to cross the track with his team and buggy almost at the same moment that another wagon meeting him crossed from the other side of the track at the same crossing. From these facts, the plaintiff supposed the train was not coming, as he thought if it were, the bell or the yard-master would warn him; and not being warned by the usual sound of the bell, which was usually rung, started across the track, and when his horses were on the track, and it was too late to stop, he could see the train moving rapidly towards him. He struck his horses to escape, but though they passed, it was too late, and the cars struck the hind wheels of the buggy, throwing him out, and hence the injury.

It further appears that this train plaintiff had seen going east as he approached the crossing only went so far that the hind wheels were about sixty feet from the crossing, when the cars stopped a moment and reversed their engine, and rapidly backed across the wagon-road, and thus caught plaintiff, and nearly caught the wagon which plaintiff met.

I will now state the facts in the case of the *Railway Co.* v. *Whitton's Adm'r*, decided by the Supreme Court of the United States, as reported in 13 Wall. 275, viz.:—

" The deceased died in December, 1864, from injuries received from a locomotive of the railroad company, defendant in the case, whilst she was endeavoring to cross its railway track in Academy Street in Janesville, Wisconsin. This street ran nearly north and south, and was crossed by four parallel railway tracks lying near each other, and running in a direction from northeast to southwest. Two of these—those on the northerly side—belonged to the Milwaukee and Prairie Du Chien Railway Company, and the other two belonged to the defendant, the Chicago and Northwestern Railway Company. One Mrs. Woodward and a Mr. Rice were standing, together with Mrs. Whitton (the deceased), just previous to the accident, upon the cross-walk on the northerly side of the tracks, waiting for a freight train of the Milwaukee and Prairie Du Chien railway, then in motion, to pass eastwards, so that they might proceed down the street and over the tracks. The weather was at that time extremely cold, and a strong wind was blowing up the tracks from the southwest, and snow was falling. As soon as the freight train had passed, Rice crossed the tracks, moving at a brisk rate. In crossing, he states that he took a look at the tracks, and that he neither saw nor heard any engine on the tracks of the defendant. Almost immediately after getting across, and before he had gone many steps, he heard a scream, and on turning around saw that the women—Mrs.

Whitton and Mrs. Woodward—had been knocked down by a locomotive of the defendant. This locomotive was at the time backing down in a westerly direction,—opposite to that taken by the freight train which had just passed,—the tender coming first, then the engine drawing a single freight-car."

Among the instructions given by the court in the case above cited, were the following:—

"Under ordinary circumstances, a person possessing the use of those faculties should use both eyes and ears to avoid injury in crossing a railway track; and if in this case the wind and noise of the freight train tended to prevent Mrs. Whitton from hearing the approach of defendant's engine, she was under the greater obligation to use her eyes. It was her duty to look carefully along the tracks of defendant's railway both northwardly and southwardly, before attempting to cross them, and it was not sufficient excuse for failing to do so that the day was cold and windy, or that one train had just passed on the track nearer to her.

"It was the duty of Mrs. Whitton to look carefully along the tracks of defendant's railway to the north before putting herself in the way of danger, and in time to see and avoid any engine or train approaching from that direction. If necessary, in order to do this, it was her duty to pause before starting to cross until the freight train had so far passed as to give a sufficient view to determine whether she could safely cross; and if she failed to look carefully along these tracks to the north, after the freight train had so far passed as to give her such a view, and in time to have seen and avoided defendant's engine, the plaintiff cannot recover.

.     .     .     .     .     .

"As to the negligence of Mrs. Whitton, the court in substance instructed the jury that she was required to exercise that degree of prudence, care, and caution in-

cumbent on a person possessing ordinary reason and intelligence, under the special circumstances of the case, having regard to the fact of its being a railroad crossing, and another train crossing the street for which she had to wait in company with Mrs. Woodward, and that she must have used ordinary care, prudence, and caution.

" The court declined to say to the jury how she must dispose of her limbs, her eyes, or her ears, but left it to the jury to find whether she had been guilty of any fault or negligence which contributed to her death; and instructed them that if she had, that the plaintiff could not recover, even if the defendant had been guilty of negligence.

" The court also told the jury, before they could find a verdict against the defendant, they must be satisfied its employees were guilty of negligence, and that such negligence caused her death." (13 Wall. 275–278.)

In this case,—the one at bar—it appears that from the side of the track upon which plaintiff approached it, the track and train were obscured from sight of one approaching, by cars and obstructions placed there by defendant, and that the crossing was much frequented; that those coming across from the opposite side to the crossing could see the track and train while plaintiff could not; that the yard-master of defendant was at the crossing, and could see the plaintiff coming to cross, and also others, but gave no warning to plaintiff, but signaled the train to back, which it did suddenly, without ringing the bell as usual; that the plaintiff, being thus situated and being well acquainted with the permanent surroundings, and knowing that the teams and the yard-master would see an approaching train if one was coming, and relying further upon the usual custom of the bell being rung when trains approached the crossing, and listening and hearing no sound, thought he

was safe in attempting to cross, but the train starting suddenly to back, caught him.

It is my opinion that there is no case to be found exactly like this wherein a court has granted a nonsuit.

A case which is as extreme as any that can be found against the right to recover against a railroad is that of the *Railroad Company* v. *Houston*, 95 U. S. 702.

In that case, the Supreme Court declared that the court from which the appeal was taken would not have erred had it instructed the jury to find for the defendant on the facts there stated, and upon the grounds there claimed. The grounds there claimed as that upon which the said instruction should have been given was that the plaintiff was a trespasser upon the private land of the defendant at the time and place where the employees on the train were not expecting to find any one; that on this account they had a right to suppose the track free, and further, that from the place of the accident, the approach of the train could be seen and heard for a long distance, and that when the train-men first saw the plaintiff it was too late to avoid the accident. From these facts, it plainly appeared that the defendant was not guilty of any neglect, while the plaintiff was a trespasser at no crossing, and was so very negligent that it appeared as if she must have adopted this method of suicide.

In the case at bar, it is admitted that the negligence of the employees of the defendant was so criminally negligent that if plaintiff had been killed instead of injured, the employees would have been guilty of criminal homicide. In that case, the plaintiff was a trespasser; in the case at bar, he is not. In that case, she could see the coming train three quarters of a mile, and could hear it also; in the one at bar, the plaintiff could neither see nor hear the approaching train on account of obstructions, and the train having stopped, and when it started, not ringing the bell as usual. In that case, the plaintiff was not induced to believe the train had passed in the oppo-

site direction; in the case at bar, it did so appear. In
that case, it was not at a regular crossing, and the yard-
master of the defendant was not where he could see the
plaintiff advancing to the crossing, and then without
notifying him, signaling the train to back as if to catch
him, as was true in this case. In that case, the plaintiff
did not see teams approaching to cross, who were in sight
of the train which he could not see, as was the fact in
this case. In that case, it did not appear that the plain-
tiff looked and listened to the best of her ability; in this
case it does so appear.

In short, there is no analogy between the facts in
that case and the case at bar, and no principle can be
extracted therefrom which can apply to this case.

There are two late cases decided by the Supreme Court
where the facts are analogous to the case at bar, and by
comparing the facts as stated in these two cases with
those of the case at bar, it will appear that the facts in
the three cases are as similar as it is possible for differ-
ent cases to be.

The two cases referred to are *Railway Co.* v. *Whitton,*
13 Wall. 275; and *Continental Improvement Co.* v. *Stead,*
95 U. S. 162. In the latter case Mr. Justice Bradley, in
delivering the opinion of the court, stated the facts as
follows: —

"This is a case of collision near the village of Lima
in La Grange County, Indiana, between a train of pas-
senger-cars of the plaintiff in error and the wagon of the
defendant in error. The latter brought the action below
to recover the damages done to himself and his wagon,
and recovered a verdict. The present writ of error is
brought to review the instructions given by the court to
the jury on the trial. The case, as appears by the bill
of exceptions, was substantially as follows: The collision
occurred in a cut about five feet in depth, in which the
wagon-road crossed the railroad, on a level therewith,
nearly at right angles, descending to it on each side by

an excavation.  The train was a special one coming from the north, and did not stop at the station, which was four or five hundred feet north of the crossing, and none of the regular trains were due at that time, although special trains were occasionally run over the road.  The plaintiff was going east, away from the village, following another wagon, and in approaching the railroad track could not see a train coming from the north by reason of the cut and intervening obstructions.  There was evidence tending to show that the plaintiff, though he looked to the southward (from which direction the next regular train was to come), did not look northwardly; that his wagon produced much noise as it moved over the frozen ground; that his hearing was somewhat impaired; and that he did not stop before attempting to cross the track; also evidence tending to show that the engineer in charge of the train used all efforts in his power to stop it after he saw the plaintiff's wagon on the track.  The evidence was conflicting as to whether the customary and proper signals were given by those in charge of the locomotive, and as to the rate of speed the train was running at the time, some witnesses testifying that it was at an unusual and improper rate, and others the contrary."

The court in that case sustained a judgment for the plaintiff, which is entirely inconsistent with the conclusion of a majority of the court in this case.  The reasons given by the United States Supreme Court in each of the cases cited lead to exactly an opposite conclusion to the reasoning of the majority of the court in this case.

Mr. Justice Bradley, speaking for the court in the case reported in 95 U. S. 162, and commenting on the facts, declares the law as follows:—

" The counsel for the railroad company requested the court to adopt certain specific instructions, to the general effect that the plaintiff should have looked out for the train, and was chargeable with negligence in not having

done so; that there was nothing peculiar in the crossing to forbid as high a rate of speed as would be proper in the case of other important highways; that an engineer is not bound to look to the right or left, but only ahead on the line of the railway, and has a right to expect that persons and teams will keep out of the way of the locomotive; and that, it is the duty of those crossing the railroad to listen and look both ways along the railroad before going on it, and to ascertain whether a train is approaching or not.

" The judge refused to adopt the instructions framed by counsel, but charged, in effect, as follows: That both parties were bound to exercise such care as, under ordinary circumstances, would avoid danger; such care as men of common prudence and intelligence would ordinarily use under like circumstances; that the amount of care required depended on the risk of danger; that, where the view was obstructed so that parties crossing the railroad could not see an approaching train, the exercise of greater care and caution was required on both sides, as well on the part of those having the management of the train as of those crossing the railroad; that the former should approach the crossing at a less rate of speed, and use increased diligence to give warning of their approach; and if the train was a special one, it was still more incumbent upon them in going through such a place to slacken their speed and sound the whistle and ring the bell than if the train were running on regular time: and, on the other hand, that the party crossing with a team should proceed with more caution and circumspection than if the crossing were in an open country, and not venture upon the track without ascertaining that no train was approaching, or at least without using the means that common prudence would dictate to ascertain such fact; but that, if a train were not a regular one, no train being due at that time, the same degree of caution would not be expected on his part as if it were a regular

train and on usual time. In short, the judge charged that the obligations, rights, and duties of railroads and travelers upon highways crossing them are mutual and reciprocal, and no greater degree of care is required of the one than of the other. He further charged that the plaintiff could not have a verdict unless the persons in charge of the train were guilty of negligence or want of due care, and unless the plaintiff himself were free from any negligence or carelessness, which contributed to the injury. The evidence of the case was fairly submitted to the jury in the light of the principles thus announced.

" This is the general scope of the charge, and we think it is in accordance with well-settled law and with good sense. If a railroad crosses a common road on the same level, those traveling on either have a legal right to pass over the point of crossing, and to require due care on the part of those traveling on the other to avoid a collision. Of course these mutual rights have respect to other relative rights subsisting between the parties. From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first; it is the duty of the wagon to wait for the train. The train has the preference and right of way. But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way. Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on many circumstances. It cannot be such if the speed of the train be so great as to render it unavailing. The explosion of a cannon may be said to be a warning of the coming shot; but the velocity of the latter generally outstrips the warning. The speed of a train at a crossing should not be so great as to render unavailing the warning of its whistle and bell; and this caution is especially applicable when their

sound is obstructed by winds and other noises, and when intervening objects prevent those who are approaching the railroad from seeing a coming train. In such cases, if an unslackened speed is desirable, watchmen should be stationed at the crossing.

" On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. They have, indeed, the greatest incentive to caution, for their lives are in eminent danger if collision happen; and hence it will not be presumed, without evidence, that they do not exercise proper care in a particular case. But, notwithstanding the hazard, the infirmity of the human mind in ordinary men is such that they often do manifest a degree of negligence and temerity entirely inconsistent with the care and prudence which is required of them; such, namely, as an ordinarily prudent man would exercise under the circumstances. When such is the case, they cannot obtain reparation for their injuries even though the railroad company be in fault. They are the authors of their own misfortune. These propositions are so indisputable that they need no reference to authorities to support them. We think the judge was perfectly right, therefore, in holding that the obligations, rights, and duties of railroads and travelers upon intersecting highways are mutual and reciprocal, and that no greater degree of care is required of the one than of the other. For, conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties. The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with, and conditioned upon the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition. Both parties are charged with the mutual duty of keeping a

certain lookout for danger, and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty. The charge of the judge was in substantial accordance with these views.

"The mistake of the defendant's counsel consists in seeking to impose upon the wagon too exclusively the duty of avoiding collision, and to relieve the train too entirely from responsibility in the matter. Railway companies cannot expect this immunity so long as their tracks cross the highways of the country upon the same level. The people have the same right to travel on the ordinary highways as the railway companies have to run trains on the railroads."

I wish to follow these opinions of the Supreme Court of the United States; and in following them, I must disagree with both the conclusions and the reasons therefor given by the majority of the court.

I am willing to reverse the parties, as my brothers have done, and imagine that the poor employees of the defendant are plaintiffs against the rich Holmes. I agree that the employees were guilty of such gross negligence as to be criminal, and by this negligence they both injure themselves and Holmes. Now, suppose that men in this condition should bring an action for their injuries. They would show that they conjointly laid a trap for Holmes, let him go into it without warning, and in their sight, and then seeing him in the trap, run the train over him.

As well might a man sue another because he hurt his hand in attempting to kill him.

Note by Reporter. —A petition for rehearing was filed by defendant in error, which was considered by the Supreme Court at its special term in July, 1887, and the court indicated to the plaintiff in error that the argument in the petition for rehearing required a reply. No final decision on the petition for a rehearing has been reached at this date, December 27, 1887.