[No. 287. Decided March 16, 1892.]

FRANK LADOUCEUR, *Appellant*, v. NORTHERN PACIFIC RAILROAD COMPANY, *Respondent*.

In an action against a railway company for injuries received at a crossing from a collision between plaintiff's wagon and a freight train, the plaintiff should not be non-suited on the ground that he is guilty of contributory negligence by reason of a failure to stop, look and listen, when the evidence tends to show that he could not have seen or heard the train if he had stopped.    (STILES and HOYT, JJ., dissent.)

*Appeal from Superior Court, King County.*

The facts are stated in the opinion.

*Kilgen, Kelleher & Emory*, for appellant.

*Mitchell, Ashton & Chapman* and *Andrew F. Burleigh*, for respondent.

The opinion of the court was delivered by

SCOTT, J.—The appellant sued the respondent for damages for injuries caused by the negligence of the railroad company.    At the close of plaintiff's testimony, the court granted a motion for a non-suit on the ground that his evidence showed that he was negligent, and that his negligence contributed to the injury.    The plaintiff was a youth twenty-one years of age, and at the time he was injured was driving a team and wagon on a street in the city of Seattle, and was injured by a collision at the public crossing with the train of defendant on the afternoon of August 8, 1890. The street was a much traveled public highway.    The railroad runs north and south, and the street running northwest and southeast crosses it at a sharp angle.    The train and plaintiff were going in the same general northerly direction towards the city.    There was testimony to show that the plaintiff, at the close of his day's work, between

five and six o'clock in the afternoon, left a brick yard
about half a mile from the crossing, and from there was
driving home towards the crossing at a slow walk.   On
his wagon was a low wood rack twelve feet long.   He was
seated on the right hand side of the wood rack between the
two wheels, the customary place for the driver of a wagon
carrying that kind of a rack, so that he could conveniently
attend to the brake.   Commencing at a point about sixty-
five feet from the track at the crossing was a decline ex-
tending down to the crossing.   Before this point sixty-five
feet from the track is reached, the view of the track to the
south was somewhat shut off by buildings along it, and the
track to the north of the crossing can be seen for only a
few feet.   After beginning the descent of this decline the
view both to the south and to the north was very limited
on account of the embankments and the fences of the rail-
road and weeds and bushes growing along the side of the
railroad.   It appears by the testimony that it was a freight
train, behind time and running at a high rate of speed,
which caused the injury.   That no whistle was blown or
bell rung until it was right at the crossing.   The speed of
the train was so great as to excite comment from persons
who saw it going.   Testimony to this effect was admitted
without objection.   The failure to blow the whistle until
within a few feet of the crossing was also noticed by cer-
tain employes of the company, who were section hands
working in the vicinity, and was commented on by them
before it was known that anyone had been injured.   The
testimony as a whole, if true, showed culpable negligence
on the part of the employes of the railroad company in
charge of the train in approaching so dangerous a crossing
under such a high rate of speed, and especially in not
seasonably giving warning to people who might be travel-
ing in the vicinity, by blowing the whistle or ringing the
bell.   The respondent contends that the plaintiff, before he

attempted to cross the track, should have stopped to listen for the sound of an approaching train, and failing to have done so he was guilty of contributory negligence and cannot recover.

This question was twice before the supreme court of the Territory in the case of *N. P. R. R. Co. v. Holmes*, 3 Wash. T. 202 (14 Pac. Rep. 688), and 3 Wash. T. 543 (18 Pac. Rep. 76). When first before the court it was held that it was the duty of the party injured to have stopped. A petition for a rehearing was granted and later, there having been a change of the members of the court meanwhile, the question was decided otherwise under the facts of that case. There were dissenting opinions upon both hearings. But in the opinion last rendered the court says, "that it may or may not be a party's duty to stop, look and listen, is dependent on the status of each case." It was conceded that there might be cases where it would be a party's duty to stop and listen, and I am well satisfied that such should be the rule under some circumstances.

As to this particular case there was testimony to show that, extending from the top of this incline, which was sixty-five feet distant from the track, was a strip of several hundred feet in length where the road was nearly level, and there was a conflict in the testimony as to how far a train could have been seen from this level street, coming from the south, some of the witnesses placing the distance at a mile or so, others at a few hundred feet, and some saying it could be seen only a little ways. It seems the plaintiff did not look to the south while passing along this strip, nor until he started down the incline, and here again the testimony was conflicting as to how far a train could be seen coming from the south. There is some confusion also, because some of the witnesses spoke of the distance the track could be seen before the view was shut off by shrubbery, etc., the train being higher than the track could

have been seen for some distance further.    But there was testimony to show that from no point along this incline could the train be seen for more than two or three hundred feet therefrom.    The testimony of the plaintiff shows that he had crossed the railroad at this point a good many times within the three months immediately preceding the accident; that whenever he had seen a train in that vicinity before he had always heard them ring a bell or blow a whistle when they were approaching, and before they got close to the crossing; that he looked to the south for a train while going down the incline, but that his view was obstructed by a passing wagon; that he listened for one, but did not hear any and that he did not stop; that he looked to the south again when he was about twenty feet from the crossing, and could see about one hundred and seventy-five feet along it only, and that he could not see and did not hear any train ; that he then looked to the north and was just about to look to the south again when the engine gave the first alarm by a danger whistle; that when the whistle was first sounded the horses were across the track, the wagon was half way across it, and he was just over the middle of the track; that he immediately struck the horses and he was just on the west rail of the track when the engine struck the rear end of the wagon; that he was knocked quite a distance, had one of his legs cut off and received other injuries.

While the testimony is uncertain and contradictory in some important particulars, yet as it appears it is a close question whether the plaintiff can escape the charge of contributory negligence.    If he could have seen along the track for a long distance while on the level place before going down the incline he certainly knew it and should have looked, especially as he could not see an approaching train from the southward for any great distance from the crossing while going down the incline, and he must have

known this also, as his testimony shows he was entirely familiar with the situation of the track and street in the vicinity. His counsel claims that the plaintiff did look to the southward for a train while on the level space, but we fail to find any testimony to that effect in the record. On the other hand, if he could not have seen along the track but a short distance so there would have been no object in looking while on this level place, he certainly should have stopped and listened before crossing the track, unless the situation was such that he could not have heard a train any material distance therefrom if he had stopped. If there is ever a case where under other ordinary circumstances a man should stop and listen, it would be where he was unable to see the track or an approaching train for more than a very short distance, and had been so unable to see for some time before reaching the crossing. But we do not think we should say as a matter of law that the plaintiff's negligence, if he was negligent under the circumstances, contributed to the injury. The testimony is contradictory as to whether he could have seen the train from the level space, so the question as to whether he was negligent in not looking while on that place is to be determined upon the facts which are for the jury to find. As to his negligence in not stopping to listen before attempting to cross, it is doubtful from the testimony whether he would or could have heard the train had he done so. One Bedford, coming from the opposite direction with a team and wagon, crossed the track just before the plaintiff reached it. He testified that he passed the plaintiff about forty feet from the track; that he was driving pretty fast and said nothing to the plaintiff about the train as he passed him; his horses seem to have been somewhat unmanageable. The testimony shows that while right on the track a view could be obtained along it to the southward for nearly a mile. Bedford says as he crossed the track

he saw the train coming then about a half of a mile away, but that he could not hear any sound from it.    It may be said that he might have heard it but for the noise of his own team and wagon, but one Mrs. Stender testified that she stood in the door of her house, a short distance from the crossing, where a view could be obtained of the track to the southward for some distance; that she saw the train coming a half mile or more away, but could not hear any sound from it and did not hear any until it whistled a few feet from the crossing.    It was not shown that this witness was deaf or that there was any unusual noise being made which prevented her from hearing.

Other witnesses who were in the vicinity at the time also testified that they could not hear the train until it whistled, and that a train could not be heard for any considerable distance at that place unless the whistle was blown or bell rung, although why such was the case was not shown. What it was that prevented the rumbling of this train from being heard does not appear upon either the direct or cross-examination of the witnesses, and why the noise which it must have made could not have been heard while the train was yet a sufficient distance from the crossing to have given a timely warning is to us inexplicable, unless it was due to the fact that this was a planked street, or more properly a bridge, for some distance at this crossing, and that a good many teams were passing over it constantly. Whatever the noise was that prevented the hearing, if it was temporary only, the plaintiff should have stopped and waited a reasonable time for it to subside, if the situation was such that he could not and had not been able to see effectually.    But this noise may have been practically continual and of sufficient volume to prevent persons at that point from hearing a train unless the bell was rung or the whistle blown, and there is testimony to the effect that had the proper and customary signals been given, the same

could have been heard without stopping. If the teams were so numerous as to make such a continual noise as would prevent the ordinary rumbling noise of the train from being heard while yet at a safe distance so that it could be avoided, the plaintiff was not called upon to stop or wait at all, as he could not have stopped the other teams so that he might listen. But whatever the inability to hear was due to, witnesses testified that the train could not be heard unless the signals aforesaid were given, and if the plaintiff could not have heard the train if he had stopped, it cannot well be contended that he was negligent in not stopping. In any event his failure to do so could not have contributed to the injury unless it must necessarily follow that if he had stopped, the train would have passed him or come in sight before he could have started up or have reached the crossing. That this would have been the case looks plausible, yet I think it was a question of fact for the jury. It was only necessary for him to stop long enough to listen, if necessary to stop at all, and it is a question of fact as to how long a time would have been required for this purpose. The jury might have found that stopping for a very short time was sufficient to enable one to listen, and that the plaintiff might have done so, and then not hearing the train, have started up quick enough to have received the injury. As it was it happened that the train struck the hind end of his wagon, and it might possibly have struck the front end or his team in the other case, and have caused him to be injured.

The questions going to the plaintiff's negligence are so inseparably woven with the facts upon which the testimony was conflicting that the case should have gone to the jury. Without undertaking to comment on the many authorities relating to the granting of non-suits, it is sufficient to say that the rule as laid down in *Schofield v. Chicago, etc., Railway Co.*, 114 U. S. 618, is a good one. Mr. Justice

Blatchford says: "It is the settled law of this court that, when the evidence given at the trial, with all the inferences which the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant," citing many authorities, and the same would, of course, warrant a non-suit under our practice. But this case does not come within that rule, and we reverse the judgment and remand the cause for trial.

Anders, C. J.—I am of the opinion that the testimony of the plaintiff, appearing in the record, if true, shows such a state of facts as would not justify the court in holding, as a conclusion of law, that he was guilty of such negligence as would preclude him from recovering in this action. And whether the testimony was true or not was a question for the determination of the jury. I therefore concur in the foregoing opinion of Judge Scott, that the motion for a non-suit should not have been granted, and that the judgment should be reversed.

Dunbar, J.—I concur in the result, because from the testimony I am not satisfied that the plaintiff was guilty of contributory negligence.

Stiles, J. (*dissenting*).—With all due deference for the result deduced by my brethren from the facts of this case, and to the argument in the course of which they reach it, I am constrained to say that in my judgment the logical result of the argument as well as the facts should be an affirmance of the judgment of the superior court sustaining the motion for a non-suit rather than a reversal. It is clear from the evidence that the appellant was grossly in fault. He drove his team at a pace not exceeding two

miles an hour along a road parallel to and not more than thirty feet from the railroad track, with his face away from the track, and could not at any time when he was within from thirty to one hundred feet of the crossing have looked to the southward whence the train which injured him came.    It was said that the train was going very fast, perhaps at the rate of thirty miles an hour.    If so, while appellant was traveling one hundred and seventy-six feet the train would move a half a mile, and when he was within ninety feet of the crossing the train was within a quarter of a mile from him.    Every witness admits that ninety feet from the crossing placed appellant on the top of the little hill along side of and within thirty feet from the track, and that the train could easily have been seen from a quarter to a half a mile to the south of that point.    Had he turned his head in that direction at any time he must have seen it even if he could not hear it, which is almost an impossible supposition, as a train of eighteen loaded freight cars traveling at thirty miles an hour must necessarily make considerable noise.    So far as obstructions are concerned, without any testimony at all the facts are made perfectly plain by two excellent photographs which the appellant himself put in evidence. The testimony of the photographer who took them and of the engineer who measured the ground shows that they were taken from the one point where there was any obstruction of the view to the south, and these photographs show that the only obstructions were two telegraph poles and a small signboard nailed on one of them at a distance of not exceeding thirty feet from the point where the photograph was taken.    The photograph shows the road and all the ascent there is on it, the railroad track southward, the place where the accident occurred and all the obstructions, and it is to my mind too clear to need any argument that no man in his senses, who chose to use either

his eyes or ears, need at that point be run down by a train approaching from the south, no matter how fast it was running, unless he had an unmanageable team, which is confessedly not the case here.

Further than that, it is apparent that if appellant, when within the line of obstructions caused by the poles, and as near as ten or fifteen feet from the railroad track, had then looked to the southward, when the train was within three hundred feet of him, he might have easily turned his entirely manageable team to the right and have thus escaped. It is perfectly clear that he sat still with his face to the north and the east all the time and entirely omitted to take any care for his own safety until the train was actually upon him. It is against the policy which assumes to have some regard for the public who travel, and are employed upon railroad trains, as well as for those who cross their tracks, that every man should use reasonable diligence in protecting himself from injury as well as avoiding possible loss of life and property by a collision with him, and the superior court is to be commended in having stopped the case when it did, thus avoiding what, even in the event of another trial, must be useless waste of time and money by both parties. That certain witnesses made statements, which, taken entirely alone, constituted a scintilla of evidence for the plaintiff, should not outweigh the burden of the case as a whole.

HOYT, J., concurs.