LOUISVILLE, NEW ORLEANS & TEXAS RAILWAY CO. *v.* HENRIETTA HIRSCH.

1. RAILROADS. *Crossings at station. Right of the public.*

Where a railroad company so locates its station as to require persons approaching it from the main business portion of the town to cross several tracks which are kept smooth for pedestrians and without any well-defined crossings, this is tantamount to an invitation to such persons to cross at any point near the station, and persons so crossing are not trespassers.

2. SAME. *Public crossings. Care required.*

And under such circumstances the company will be held to the utmost caution in the movement of its trains on such tracks to prevent injury to persons so crossing.

3. SAME. *Injury to child. Contributory negligence of attendant. Capacity.*

Where two girls, aged seven and fourteen, attended by an adult, went upon a track, and were injured by a moving train, in a suit by the parent to recover for the injury, an instruction for defendant that contributory negligence of the attendant should be imputed to the children was properly refused. Whatever might be true as to the younger, the act of the

older child cannot be considered without reference to the capacity and discretion which, at her age, she was presumed to possess.

FROM the circuit court of Washington county.
HON. R. W. WILLIAMSON, Judge.

This action was brought by Henrietta Hirsch to recover of the Louisville, New Orleans & Texas Railway Company, damages for the death of one daughter aged seven, and injuries to another daughter aged fourteen, who were struck and run over by a backing train of the defendant. She seeks to recover for loss of services of the children, medical bill and funeral expenses. The defendant pleaded the general issue, and also defended upon the ground that the children, as well as their adult attendants, were guilty of contributory negligence.

The accident occurred in the village of Leland, in Washington county. The depot building contained in one end a waiting-room for passengers, and ticket-office, while the other end of it was used for a hotel and saloon. Appellant's cars always stopped there to take on and put off passengers. This building is separated from the only business street of the village by four railroad-tracks—one main track and three switches running parallel north and south for some distance —the building being west of these tracks and the town of Leland east of them. The street is also parallel to the tracks, separating the town from them, and several plank walks extend across the street to the eastern edge of the tracks. These walks were constructed by and in the interest of shop-keepers in the village but have been used by the public in going to and from the depot. All the tracks in the vicinity of the depot and the intervening spaces are filled in with cinders, and are thus made level and smooth. There was no well-defined crossing over the tracks in the vicinity of the depot, but several hundred feet north of the depot building there was a crossing maintained by the company leading from the east

across the tracks to a warehouse or freight-depot situated on the west side of the above mentioned four tracks. It was shown, however, that this crossing was never used by pedestrians approaching the depot from the business portion of the town. The accident occurred about 10 o'clock at night. A few minutes before the train was expected to leave for Greenville the two children, who intended to go to that place, left the business portion of the village in company with a Mr. Dreyfus and his wife and one Kaufman, a friend, intending to go to the waiting-room. They went to one of the crossings which extended over the street to the tracks and found it blocked by a long freight-train standing on one of the tracks and having two tracks between it and the depot. Finding that the other street crossings were also blocked by the freight-train, at least apparently so, they went south, around the engine of the freight-train, this being the shortest and most convenient way to reach the station. The two children were immediately in front of Kaufman, who was followed closely by Dreyfus and his wife. They hurried around the engine of the freight-train, which was blowing off steam. There is conflict in the evidence as to whether the freight-train was moving or not. If moving at all, it was very slowly. According to the plaintiff's witnesses, it began to move as the children went around the engine. As they rushed upon the next track the two children were struck and run over by a backing passenger-train. Kaufman, discovering the danger the children were in, shouted to them, but too late to avoid the accident. The younger girl died from her injuries, and the older girl was seriously and perhaps permanently injured.

The record contains much conflicting evidence, but this general statement of facts, taken in connection with that contained in the opinion of the court, will be sufficient for an understanding of the questions decided by the court.

Many instructions were asked and obtained on both sides, the fourteenth, of which special mention is made in the opinion, being as follows:

" The court instructs the jury that if Henry Dreyfus had charge of the children for whose injuries this suit is brought, and, in endeavoring to reach the depot of the defendant from the town of Leland, he hurried in front of a freight-engine of defendant's standing upon one of its tracks, and, knowing that there were other tracks between the track upon which said freight-engine was standing and the depot, and that trains of the defendant were liable to be passing backward and forward upon said other tracks, without stopping to look or listen for such trains, he allowed the children to go upon the track of the defendant, where they were struck by a train, they will find for the defendant."·

The jury found a verdict for plaintiff, assessing her damages at $7,500; but, the court deeming this excessive, a remittitur of $5,700 was entered, and judgment entered for $1,800. Defendant appealed.

*J. B. Harris*, for appellant,

Reviewed the facts in evidence at great length to show that there was no negligence on the part of the railway company, and that the negligence of the children and their attendants contributed to the injury and death; and, as to the questions decided by the court, made the following points and cited the following authorities :

Persons crossing a railroad-track are always required to look and listen for approaching trains. Especially is this true when they are not lawfully using the track, but are crossing at a place not a highway. 71 Ill., 500.

The parties here rushed into the danger, which could have been avoided by ordinary care. In such case the defendant is not liable.· 46 Ill., 74. Trying to cross a track when a train is known to be due is negligence. 30 N. J. Eq., 604; 58 N. Y., 248. It was negligence to be rushing across the track so rapidly as not to be able to stop in time to avoid a collision. Beach on Con. Neg., 198; 13 Barb., 9. The track

itself is a warning of danger to those who go on it. Beach on Con. Neg., 204; 97 Mass., 225.

When the view of a track is obstructed, or the crossing is in other respects specially dangerous, the traveler must exercise a higher degree of care. Patterson, Ry. Ac. L., 171. If one track of a double track line is obstructed at a crossing by either a stationary or moving train, it is contributory negligence to go upon the line without looking up and down the other line. *Ib.*, 172; *Stubley* v. *Ry. Co.*, L. R, 1 Exch., 13; *Skilton* v. *Ry. Co.*, L. R., 2 Com. Pleas, 631; 63 *Ib.*, 746; 40 N. Y., 34. To allow the two girls to precede the crowd around the moving train was itself gross negligence. 16 Mo., 80; 75 *Ib.*, 138; 67 Me., 100; 40 N. Y., 34.

The habit on the part of individuals or the public to travel over the tracks on foot, and the failure of the railroad company to prevent this, does not change the relative rights of the public and the company. It is none the less a trespass because oft-repeated. Beach on Con. Neg., 219; 83 Ill., 510.

Mere license to pass over tracks will not create the duty to provide against the danger of accidents. 71 Ill., 507; 20 *Ib.*, 487; 83 *Ib.*, 510; 96 Me., 173; Beach on Con. Neg., 218; 100 Mass., 208; See also Patterson Ry. Ac. L., 175.

*Campbell & Starling*, for appellee,

Filed a lengthy written argument, discussing the evidence and the several instructions, and making, among others, the following points:

1. The construction and location of the depot and tracks with reference to the town was equivalent to an invitation to those who had business at the depot to cross its tracks at any convenient point.

2. If mistaken in this, the custom of the public both by day and night to cross the tracks at the depot, with the knowledge of appellant's servants, established a license to cross.

3. If this be not true, the dangerous situation of the tracks

with reference to the town, the known habit of the public to cross the tracks, the obstruction of the view of the Greenville train by the freight-train, the natural inclination of persons intending to cross to go around the freight-train, the fact that the Greenville train was about to leave, and the reasonable certainty that persons coming to take the train would have to pass around the freight-train—all these considerations imposed upon the company the greatest degree of care in the movement of the Greenville train. For the authorities on this point see subject, "Crossings," in Am. & Eng. Ency. of L. There can be no distinction between a well-defined crossing narrowed to a small space and one not so marked, however reasonably wide, if in fact the public are invited or licensed to cross. If the company knew that the place was used generally for crossings, it was bound to exercise more care than at other points. See 113 Pa. St., 162; 27 N. J. Eq., 550; 33 Wis., 67; 50 Mo., 461.

The fact that no person was standing on the rear of the backing train was itself negligence under the circumstances. 58 Ala., 451. Being on the track at a place where they had no right to be was not *per se* contributory negligence, but whether the parties, under the circumstances surrounding them, acted with reasonable care, was a question for the jury. *V. & M. R. R. Co.* v. *McGowan*, 62 Miss., 682.

Argued orally by *J. B. Harris*, for appellant, and *R. B. Campbell*, for appellee.

WOODS, J., delivered the opinion of the court.

The death of one of appellee's children and the serious disablement of the other resulted from their being run over by a backing train of appellant. There is no controversy touching this fact. The negligence of the appellant is thus made out *prima facie*, and it becomes its duty to relieve itself of the burden of liability by showing circumstances of justification or excuse. As matter of fact, the jury which tried

the issue below found that appellant's evidence did not absolve the defendant corporation from liability, and a careful and protracted examination of all the testimony in the record leaves us unable to declare that the verdict is unsupported by the evidence.

In our opinion, the children were not trespassers on appellant's premises at the time of the occurrence of the wretched catastrophe; they were not on appellant's grounds by mere permission only. The location of the depot, with its waiting-room and ticket-office; the place at which the trains uniformely were stopped to receive and disembark all passengers (white persons); the necessity of crossing the grounds and tracks of appellant by passengers taking or leaving its cars at Leland, owing to the location of the station-house and the laying out of the main line and side-tracks of appellant's railway at that place, at or near the point of its depot; the fact that no crossing, other than the space in front of the station-house and between it and the contiguous town, had been prepared for or was used by either the railroad officials and servants or the general public, for pedestrians, in passing to and fro between the railway station-house and the town adjacent—in a word, the location, lay-out and surroundings of the station-house and tracks must be regarded as an invitation to the public to approach and depart from the depot over and across the short, smooth and convenient space lying between the railway offices and the business street of the town.

It is true some of the witnesses state that the only public crossings at Leland are two, viz.: One beyond Deer Creek from the town and the depot (whose mention even, in this case, seems idle), and another about six hundred feet northwardly from the station-house and hotel in which the ticket-office and waiting-room were kept, at the point denominated the Fifth street crossing. Whether any crossing for persons on foot was to be found where Fifth street crossing was intersected by the railway tracks seems doubtful, to say the

least. That a foot-walk had been prepared by the defendant corporation on the west of this crossing, designed to be used by persons passing from the crossing, or the company's warehouse near the crossing, to the depot immediately across the tracks from the business part of the town, is shown by the evidence of one witness; but that this was known to the public, or any part of it, desiring to embark upon or disembark from trains of appellant does not appear; nor is there any evidence showing that any human being, railway servant or stranger, ever used said prepared walk on the west of the tracks in passing from Leland to the station-house of appellant. It is safe to say that no passenger, stranger to Leland and the railway·buildings and lay-out of tracks, on disembarking at the station-house at that point, either by day or by night, and particularly by night, would have walked up northwardly for six hundred feet on the west side of the lines to the Fifth-street crossing, and there have walked over the tracks, and then have turned southwardly and walked back six hundred feet to the town, when the absence of all beaten and defined walks leading to the town from the depot invited him to use the smooth, convenient, cindered ground over which the line ran immediately in front of the depot, and beyond which, in immediate reach and view, lay the town.

So inviting passengers to approach its depot in this town, the appellant was under strong obligation to exercise the utmost care and caution in the movement of its trains and the handling of its cars so as to prevent injuries to persons going to or from its offices.

Did it exercise the utmost care and caution in moving its trains at the time when the injuries complained of were inflicted? The jury has found that it did not, and the facts are not so clearly and strongly in conflict with this finding as to justify a reversal by us. That the injuries were inflicted by the train of appellant is confessedly shown, and, *prima facie*, its negligence is thereby made out. Is the evidence clear and convincing that the injuries were inflicted under circum-

stances of excuse or justification, whereby the appellant is absolved of wrong? We are not warranted in so affirming. The harrowing accident occurred in a second, almost in the twinkling of an eye, as appellant's counsel graphically characterize the time, and every incident connected with or accompanying it transpired in a moment or two, at the outside. The night was dark and the surroundings unfavorable for exact observation or minute examination. As to the occurrence and its attendant circumstances, there is, as was to have been expected, even from persons altogether truthful and trustworthy, much seeming and some real contradiction. The theory of the appellee was that the children were passing around a motionless train, and, when on the track in front of it, the same was suddenly put in motion, and steam was blown off, and, that in escaping this threatened danger caused by appellant's servants, the children, in their alarm and confusion, blinded by the glare of the head-light of the train thus suddenly put in motion, and their vision and hearing obstructed and impaired by the steam being blown off by this engine, were caused to come into contact with another train backing down upon another track, which had been hidden from them by a long train of cars whose engine they had undertaken to pass around.

The theory of the appellant was that the children unnecessarily rushed around a motionless engine, and, without using any precaution, recklessly ran upon another train, being, cautiously, and in the usual manner, moved upon another track.

There is evidence to support each of these theories, and the jury might properly have found the facts as contended for by either party; but, having found as the jury did, the question is, not whether we would have so found, but whether such finding can be said to rest on evidence.

It is contended, further, that the trial court erred in its action upon the instructions asked by appellant and refused. We might content ourselves by saying that the instructions

given for appellant fully stated the law for defendant below, and that those refused were properly withheld from the jury. We think it proper to consider the action of the court in refusing appellant's fourteenth instruction, however, and to show the correctness of such action.

The instruction wholly excludes from the mind of the jury the element of the responsibility of the two children, and of the reciprocal rights and duties of them and the railroad company. The elder child had presumptively arrived at the age when discretion is usually exercised, though not in perfect degree. She, at any rate, was no longer an infant in leading-strings, nor a minor of such tender years as to preclude discretion on her part, and accountability and responsibility proportionate to her discretion. Where the child is not wholly irresponsible, the capacity and experience of such child is to be considered, and whether, in the particular case, the injured minor exercised the care and caution usually looked for in other children of like age and capacity with the one complaining, is a question for the jury's determination. The wholly irresponsible infant has imputed to it, without limit or qualification, the conduct of the parent, or other person standing *in loco parentis*, but this is not the rule of reason or law in case of the child who has arrived at an age where capacity and discretion are presumed.

The supposed negligence of Henry Dreyfus is imputed bodily to both children, and any consideration of their capacity, experience and discretion is excluded from the jury. The knowledge of Henry Dreyfus as to the situation of the depot at Leland, the lay-out of the tracks and the movement of trains, is imputed in its entirety to the children. The absolute imputation of the negligence of Dreyfus was improper, and the instruction was erroneous to the extent indicated.

*Affirmed.*