THOMAS REDHING, DEFENDANT IN ERROR, v. THE CEN-TRAL RAILROAD COMPANY OF NEW JERSEY, PLAINT-IFF IN ERROR.

Argued November 28, 1902—Decided March 3, 1903.

1. When the position of the station and tracks of a railroad com-pany is such that passengers, intending to take a train at the station, must cross intervening tracks to reach their train, and a train approaching the station is so near and moving so slowly as to indicate to prudent people that it is about to receive the passengers and the passengers then step upon the intervening tracks without apprehending danger, it is a question for the jury whether they have exercised proper care, even though the ap-proaching train is not designed to stop at the station.
2. Under like circumstances it is a question for the jury whether the company is guilty of negligence, if a train running on the intervening tracks strikes one of the passengers.
3. Although sentences in a charge may, if read apart from their con-nection, need some qualification to render them accurate, yet if the qualification be given in the context so that the jury cannot reasonably be thought to have been misled by the charge taken in its entirety, there is no error.
4. Rulings on evidence, which have done no harm to the complaining party, afford no ground for reversal of the judgment.

---

On error.

For the plaintiff in error, *William A. Barkalow* and *Sherrerd Depue.*

For the defendant in error, *Joseph E. Stricker* and *Alan H. Strong.*

The opinion of the court was delivered by

DIXON, J.   At the Roselle station of the New Jersey Central railroad there are six tracks, lying south of the main station and ticket office, and in this case they are numbered from one to six, beginning at the south.   Tracks Nos. 1 and 3 are used by trains going east; tracks Nos. 2 and 4 by trains going west; track No. 5 is a switch track, and track No. 6 is used by a local train made up at Roselle to go east.

About six o'clock in the evening of November 14th, 1900, the plaintiff went to the station, intending to return by that road to his home in Perth Amboy and having an excursion ticket for Elizabethport.   On reaching the station he became engaged in a business conversation, after which he got a time-table and ascertained, either by that or by information from a friend, that his train would soon be in.   It is not clear whether the train he had in mind was one leaving at six fifteen, which starts west of Roselle and arrives there on track No. 3, or one leaving at six thirty-four, which is made up in the yard just west of Roselle station and comes in on track No. 6, but probably it was the latter.   The plaintiff had no knowledge as to what tracks were used by the several trains. At about six thirty-three he was waiting on the station for his train when he saw a train approaching from the west. As it approached he noticed it slackening speed, and when "the engine was just opposite to him, going very slow, very nearly stopped, but not quite," he proceeded to cross the intervening tracks and was struck on track No. 6 by the engine of the six thirty-four train.

Under the evidence there is room for doubt as to whether the approaching train was the six fifteen train behind time, or an express train on track No. 1, due to pass through Roselle at six thirty-two, but not to stop.

The foregoing statement indicates the case as contended for by the plaintiff, and, as it has some support in the evidence, we must, on this writ of error, deem it true.

On behalf of the defendant it is insisted that the plaintiff should have been nonsuited or a verdict against him should have been directed, because there was no evidence of breach of duty on the part of the defendant, and because the plaintiff was indisputably guilty of negligence in attempting to cross the tracks before the approaching train had fully stopped, and without looking up or down the tracks to be crossed.

These reasons may be considered together, as they seem to be in some degree correlative.

It is the settled rule in this state that, when the position of the station and tracks of a railroad company is such that passengers, about to take or leave a train *standing at the station,* must cross intervening tracks, it is negligence in the company to run cars over those tracks, and that it is a question for the jury whether a passenger, who attempts to cross those tracks without looking for approaching cars, is guilty of negligence. *Jewett* v. *Klein,* 12 *C. E. Gr.* 550; *Atlantic City Railroad Co.* v. *Goodin,* 33 *Vroom* 394. See 56 *Cent. L. J.* 41.

Is this rule applicable to the case of a passenger who starts to cross intervening tracks when the train, which he intends to take, has not actually stopped, but is partly at the station and moving so slowly as to indicate to prudent people that it is about to stop to receive passengers? An affirmative answer to this question was given by the language of Mr. Justice Dalrimple, speaking for this court, in Jewett *v.* Klein, where he said of the passenger: "He was not bound to look to see whether another train was approaching, or wait, before crossing the easterly track, till the passenger train had come to a full stop." The rule, with this modification, was directly applied in *Terry* v. *Jewett,* 78 *N. Y.* 338, where the passenger, without having looked for danger, was walking diagonally across an intervening track to take an approaching train. To the same effect is also *Kohler* v. *Pennsylvania Railroad Co.,* 135 *Pa. St.* 346, where it was held that "it was not necessarily

negligent for the passenger to start for his train before it had come to a full stop. * * * Whether or not the slowing up of the train and the other circumstances justified the plaintiff in crossing the track when and as he did was not sufficiently clear to be decided against him as a question of law."

Considering these cases as establishing the doctrine that a passenger, who is required by a railroad company to cross its tracks in order to reach a train which has stopped or almost stopped at a station to receive him, may cross those tracks without looking for danger, subject to the opinion of a jury as to whether he has exercised due care, it seems to follow that, if the servants of the company run him down on those tracks, the conduct of the company or its servants must, in some particular, be inconsistent with duty. For, if under conditions regularly occurring the passenger need not apprehend danger on the track which is usually a dangerous place, it must be because there exists a duty on the part of the company, the conduct of whose servants alone can make the track dangerous, to withhold or prevent the usual cause of danger; and such is the view taken in the cases cited.

These considerations are controlling if the approaching train was one designed to receive passengers at Roselle.

But a further step must be taken to sustain the present judgment for the plaintiff, because the trial justice was asked and refused to charge that if the approaching train was one not scheduled to stop at Roselle—that is, if it was the express train due at six thirty-two—the plaintiff could not recover.

The fact that the train was not scheduled to stop can have no bearing on the question of the plaintiff's negligence, for he had no notice or duty to obtain notice of the fact. His conduct must be judged by the circumstances presented to him.

But that fact has a bearing on the question of the defendant's negligence.

If the train was the express, which regularly passed through Roselle at the rate of fifty or sixty miles an hour, its slackening of speed at that station, so as to suggest a purpose to stop for passengers was an unusual occurrence, for which it was not so clearly the duty of the company to make provision

as it is for ordinary conditions. But, on the other hand, we cannot judicially say that such occurrences must have been so rare that the company could not anticipate them, and hence should not be bound to provide for them. It was in evidence that over a hundred trains pass through Roselle between seven o'clock A. M. and eight o'clock P. M. daily, and that it is the duty of a flagman at the station to give to every express train a signal indicating whether it shall stop or proceed. These circumstances show that there is reason for expecting that express trains, not scheduled to stop at Roselle, may nevertheless sometimes be required to stop there, and in its own interest the company has made arrangements accordingly. A high degree of prudence might suggest further arrangements for the safety of passengers at the station. The time for the express due at six thirty-two is so close to the time at which the six thirty-four train is to leave that there may be said to exist sufficient reason for anticipating such a condition as was presented on the evening of the accident—that is, the express train slackening speed to such a degree as to indicate a purpose to stop for passengers, and passengers unfamiliar with the precise movement of trains mistaking it for the six thirty-four train, and crossing the tracks to reach it just as the six thirty-four train was coming to the station. The likelihood of such occurrence is increased when, as in November, the darkness of the evening has made the discernment of moving objects less certain. The dangers incident to such a condition would surely be diminished, and perhaps be entirely obviated, by requiring the six thirty-four train not to approach the station when the express was approaching; and the non-existence or non-observance of such a requirement gives room for an inference that the company or its servants had failed to exercise the high degree of care due to passengers.

We conclude on this point that it was proper to leave the question of the defendant's negligence to the jury.

The next objection urged on behalf of the defendant is that the trial justice, in one clause of his charge to the jury, made the right of the plaintiff to cross the tracks depend on his "honest belief," instead of his "reasonable belief." But an

examination of the whole charge shows that, by frequent expressions, the jury were instructed that it was incumbent on the plaintiff to "exercise ordinary care," to believe "only with reason," to act as a "prudent man would," to act as "a man of ordinary prudence, judgment and discretion," not to do "anything negligent," and that if he failed in this respect the verdict must be for the defendant. It is unreasonable to suppose that, with these numerous utterances sounding in their ears, the jurors could have been misled by a single expression which omitted the proper qualifications. They must have understood that an "honest belief" meant such a belief as was stated in the charge generally, a belief having a reasonable basis. As was said by Mr. Justice Strong, in *Evanston* v. *Gunn,* 99 *U. S.* 660, 668, "sentences may, it is true, be extracted from the charge which, if read apart from their connection, need qualification. But the qualifications were given in the context, and the jury could not possibly have been misled."

Counsel for defendant further complain of two rulings on the admission of evidence. One is that the plaintiff was permitted to prove the rule of the company directing that, when a train is receiving or discharging passengers who are required or liable to cross the tracks, a train approaching on those tracks must stop. As this rule was no broader than the general legal rule, no harm could come from its reception, even if it be not legitimate evidence. The other complaint is that a question, put on cross-examination of one of the plaintiff's witnesses, was overruled. But as the same question was afterwards put to the same witness and answered, no harm was done by that ruling.

There is no other complaint requiring specific notice.

We find no error, and the judgment for the plaintiff should be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, GARRETSON, HENDRICKSON, BOGERT, VREDENBURGH, VOORHEES, VROOM. 8.

*For reversal*—THE CHIEF JUSTICE, VAN SYCKEL, GARRISON, PITNEY. 4.