[No. 6607.   Decided April 2, 1908.]

# A. H. GREGG, *Administrator of the Estate of Sarah May Wright et al., Appellants,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*[1]

APPEAL AND ERROR—REVIEW—GRANT OF NEW TRIAL—GROUNDS OF ORDER—RECORD. The record discloses that a new trial was granted on points of law which may be reviewed on appeal, and excludes other grounds involving the discretion of the trial judge, where it appears that two grounds of negligence were alleged as the cause of the death of a person struck by an engine; that the court, in a letter to the attorneys deciding the motion for a new trial, stated that he erred in submitting to the jury one of the grounds of negligence, and in denying defendant's requested instruction withdrawing that issue, upon which issue he concluded that there was no evidence to submit to the jury, stating that this "was the principal ground relied upon for a new trial and it will be granted upon this ground," and that he did not at that moment recall or pass upon the other grounds, if any; that this letter was included in the statement of facts and made part of the record; and that the judge later refused to sign an order reciting as the sole ground of error the refusal of the defendant's instruction requesting withdrawal of that issue from the jury, but entered a general order overruling the motion for a new trial without reciting any ground therefor; the motion for a new trial embracing the grounds of excessive damages and insufficiency of the evidence to sustain the verdict (RUDKIN and FULLERTON, JJ., dissenting).

RAILROADS—NEGLIGENCE—DEATH OF PEDESTRIAN ON TRACK—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS. In an action for the death of a person struck by an engine, based upon negligence of the railroad company before the deceased was struck, and also in starting up the engine again while deceased was still alive and in a position of peril, it was error to refuse to charge that the deceased's contributory negligence in going on the track without stopping to look or listen would bar a recovery, unless the company failed to exercise reasonable care after learning that the deceased was in a position of danger.

SAME—LOOKING AND LISTENING — QUESTION FOR JURY. A man fifty-one years of age possessed of all his faculties, is guilty of contributory negligence, as a matter of law, in crossing a railroad track at a station to board an incoming train, where it appears that he

[1]Reported in 94 Pac. 911.

knew the train was coming in and stepped from behind the corner of a house eight feet from the tracks, in front of the approaching engine, which was only fifteen feet distant, attempting to cross to the station platform without stopping to look or listen for the train.

CARRIERS—WHO ARE PASSENGERS./ A person crossing a railroad track to reach a platform with the intention of taking a train, is not a passenger, although no tickets are sold at that station and fares were to be paid on the train./

SAME—CONTRIBUTORY NEGLIGENCE—CROSSING ROADS. The fact that one is a passenger does not relieve him from the consequences of contributory negligence in crossing a track in front of a moving train without stopping to look or listen.

HADLEY, C. J., and ROOT, J., dissent.

Appeal from an order of the superior court for Spokane county, Huneke, J., entered August 25, 1906, granting a new trial to the defendant, in an action for the death of a pedestrian struck by defendant's train. Affirmed.

*Robertson & Rosenhaupt, Fred Miller,* and *L. O. Whitsell,* for appellants.

*Edward J. Cannon,* for respondent.

CROW, J.—Sarah May Wright and Florence May Wright, widow and infant daughter of William Wright, commenced this action to recover damages for his death, alleged to have been caused by negligent acts of the defendant, the Northern Pacific Railway Company. The opinion of this court on a former appeal, *Wright v. Northern Pac. R. Co.,* 38 Wash. 64, 80 Pac. 197, contains a statement of the pleadings. After the cause was remanded a second verdict in favor of the plaintiffs was set aside and a new trial ordered. From the order granting the new trial, the plaintiffs have appealed.

The respondent's Burke branch road, about eleven miles in length, occupies a mountain canyon in Idaho, extending up a four per cent grade from Wallace to Burke. At Frisco, one of four intermediate stations, the railway platform was located on one side of the respondent's track, and on the other side was the Frisco boarding house fronting up the canyon

towards Burke. The kitchen towards Wallace was only about eight feet from the track. Mr. Wright had come to Frisco a day or two before his death to take charge of this boarding house, with which it is not contended the respondent was connected. The railway platform intended for the use of passengers was without shelter, there being no station building or ticket office. Passengers received at Frisco paid fare on the train. Several electric arc lights in the immediate locality were shown to be burning. No witness positively testified that they were not burning. The upper end of the canyon is so narrow at Burke that the engine cannot be turned. It is there switched to the rear of the train, which returns to Wallace, running down grade by gravity with tender, engine, and cars in the order mentioned. The engine ordinarily used was provided with two white lights commonly known as headlights, one placed on the rear end of the tender for use in returning down grade. On the evening of the accident this regular engine had been laid off for repairs, and another substituted, provided with two red lantern lights, one on each side of the rear end of the tender. Although the train ran down grade by gravity, a full head of steam was maintained by the fireman and engineer for switching and other purposes. The appellants offered evidence, much of it disputed, which tended to show that, on the evening of the accident, the bell was not rung; that the engine was not puffing steam; that the train made but little noise; that the night was dark, and the weather somewhat inclement; that according to the rules of the company the two red lights on the tender indicated the rear end of a departing train; that they were also a sign of danger, and that they were dim, affording but little light.

The undisputed evidence shows that, on November 22, 1904, Mr. Wright intended to go to Wallace; that intending passengers frequently remained in the boarding house awaiting the coming of the train; that Wright and others who were there knew the train was coming; that some of them heard its approach; that he told one of the waiter girls, who was also

going to Wallace, to hurry or she would be left; that he passed through the kitchen and down some steps; that when he reached the lower step, about eight feet from the track, he emerged from behind the building theretofore between him and the approaching train; that he walked in a diagonal direction towards the track, stepped between the rails, and was instantly struck by the train; that one Hoover saw him come from the kitchen and walk to the track; that the waiter girl who had followed him saw him step between the rails, and that the fireman, who was keeping a lookout down the track, saw him come from behind the boarding house about twelve or fifteen feet ahead of the tender, and walk upon the track. Hoover and the fireman both testified that he walked diagonally to the track, and that he did not look or appear to listen. No other witnesses who saw him disputed this evidence.

The testimony of Mr. Hoover, the fireman, and the waiter girl, considered together, shows that at least one of them saw him at every point of his progress from the kitchen door to the center of the track, yet not one of them testified that he looked toward the approaching train, their only recollection being that he did not do so. In making this statement we are not unmindful of the fact that Mr. Hoover, on cross-examination, said: "Well, he might have looked out of the boarding house." Upon this remark, which is no recital of actual knowledge of the witness, but a surmise only, appellants predicate the contention that Mr. Wright did look. The fireman stated that, when he saw Mr. Wright, he immediately notified the engineer, who at once made an emergency application of air to the brake, or, as he expressed it, "dynamited the train." On approaching Frisco, and before the fireman saw Mr. Wright, the engineer made a service application of air and slackened his speed to four or five miles an hour.

The appellants introduced further evidence, also vigorously disputed, tending to show that after the train first struck Mr. Wright, it continued down grade for a distance of from fifty to eighty feet; that his clothing caught on the brake or brake

beams; that he was thus pushed ahead of the train, that when it stopped, he was on the track, held in front of the wheels; that he was alive and struggling to extricate himself, and that before he was removed, the engineer negligently started the train, causing the wheels to pass over and instantly kill him. On the trial the appellants contended that the respondent was guilty of negligence in the first instance in noiselessly running its train down grade on a dark night without any headlight, without ringing the bell, without giving any other signal, and in having the two red lights which indicated a receding rather than an approaching train; that it was thereafter negligent in wantonly running its train over Mr. Wright while he, still alive, was pinioned to the track under the wheels. The respondent denied negligence on its part, but contended that Mr. Wright was guilty of contributory negligence.

The trial judge announced his decision in a letter to the respective attorneys, in which he said:

"At the conclusion of plaintiffs' case, defendant challenged the sufficiency of the evidence and moved that the jury be discharged and the court direct what judgment should be entered, defendant relying upon the ground that plaintiffs' testimony showed that deceased had failed to exercise that care which the law requires of all persons who knowingly cross a railroad track. I stated in answer to defendant's argument on this motion that if that were all there was in the case, that I should have no hesitancy in granting his motion, and then added that there was testimony showing another feature, namely the backing of the train after deceased had been knocked down, which would have to go to the jury, for which reason the motion was denied. Defendant requested an instruction upon the same ground, but as I had decided to send the case to the jury I did not think at the time of the importance of this phase of the case, and hence sent the whole case to the jury. I regret now that I did not take time to consider the requests for instructions, for if I had, I have no doubt that I should have taken from the jury the first phase of the case, i. e.. that deceased received his first injury through his own want of care, and that defendant would not be liable therefor. In my judgment this is not a question of fact for

the jury, but is a question of law for the court. There is no
testimony whatever that I recall, tending even remotely to
show that deceased was in the exercise of due care as he was
about to cross the track, but the testimony is all one way; that
he knew that the train was coming and was near at hand; that
he himself left the boarding house—only a few feet away—for
the purpose of boarding that identical train; that he called to
others present to hurry or they would miss the train; that he
walked down the steps and stepped upon the track and almost
instantly was knocked down by the approaching train; that
the train had at least two red lights displayed upon the end
that was approaching him; and that the track was straight
and entirely clear of obstruction. There is an allegation that
the train was running at a high and dangerous rate of speed,
but there is no testimony at all to support this allegation.
There is no testimony therefore to show any negligence on the
part of the defendant this far in the story of this accident, and
under such state of the evidence, it would not be right to
permit that question to go to the jury in the face of a re-
quest on the part of the defendant that it be taken from them.
This was the principal ground relied upon for a new trial,
and it will be granted upon this ground. If there were other
grounds presented, I do not at this moment recall them, and
they are not passed upon.  .   .   .   I am convinced that I
erred in denying the request of defendant to instruct the jury
as requested, and therefore feel compelled to grant the new
trial."

This letter has been included in the statement of facts and
made a part of the record. The appellants presented an order
which recited that the new trial was granted on the sole ground
of error in refusing the instruction requested by respondent.
This order the court declined to sign, presumably for the rea-
son that it did not fully state the substance of his written
opinion. A general order was entered not stating any par-
ticular grounds. With the record in this condition, the re-
spondent's attorney contended on the oral argument that it
does not clearly appear that the motion for a new trial was
granted on points of law which may now be reviewed on this
appeal, excluding other grounds involving the discretion of
the trial judge. The majority of this court, including the

writer, think the contention cannot be sustained, but only two of such majority favor an affirmance of the order of the trial court. The writer being of the opinion that only questions of law not involving any discretion are now before us for consideration, will announce his views in stating his reasons for affirming the judgment of the trial court.

The trial judge correctly indicated in his opinion that there were separate and distinct acts of negligence urged against respondent; (1) those alleged to have occurred before the train struck Mr. Wright, and (2) those alleged to have occurred while he, still alive, was under the train. There was evidence which, although disputed, tended to show these separate acts of negligence. The issues as to whether the latter acts were proven and respondent's liability therefor were properly submitted to the jury. For the first-mentioned acts the respondent could not be held liable unless Mr. Wright was free from negligence upon his part, which contributed to, or was the proximate cause of, the accident. The following is the instruction requested by the respondent:

"I charge you that William Wright, the deceased, was guilty of negligence in going upon the railway tracks without looking and listening for approaching trains, and such negligence bars a recovery in this action, unless you find that the defendant railway company's servants, after learning that said deceased was in a position of great danger and peril, failed to exercise reasonable diligence and care to prevent injuring him."

The trial judge in granting the new trial correctly held that it was prejudicial error to refuse this instruction.

In ascertaining the existence or nonexistence of negligence that issue must be considered relative to all the circumstances of time, place, and person. No two cases can be found in which the facts are identical. Contributory negligence is ordinarily a question to be passed upon and determined by the jury. A trial court should not withdraw such issue from their consideration, and hold a party guilty of contributory negligence as a matter of law, unless after giving such party the

benefit of all controverted questions of fact, and every reasonable inference to be drawn therefrom and from conceded facts, it indisputably appears that such negligence did exist, and was, in whole or in part, the proximate cause of the accident. Bearing this rule in mind, we are compelled, upon consideration of the facts before us, to hold that the deceased was guilty of contributory negligence as a matter of law. The undisputed evidence shows that he was a man fifty-one years of age, possessed of good eyesight, hearing, and bodily vigor; that he was familiar with the locality and its surroundings; that before he left the boarding house he knew the train he intended to take was coming; that he told others to hurry or they would be left; that from the front of the boarding house one could see up the track several hundred feet; that he made his exit through the kitchen, where he could not look up the track until he was within eight feet of the nearest rail; that on emerging from behind the building he did not stop, look, or listen, but walked in a diagonal direction, looking from the train, until he stepped between the rails and was instantly struck by the tender. How a man in possession of all his faculties could do these acts and not be held guilty of contributory negligence as a matter of law is beyond comprehension. *Woolf v. Washington R. & Nav. Co.*, 37 Wash. 491, 79 Pac. 997; *Baker v. Tacoma Eastern R. Co.*, 44 Wash. 575, 87 Pac. 826; *Anson v. Northern Pac. R. Co.*, 45 Wash. 92, 87 Pac. 1058; *Railroad Co. v. Houston*, 95 U. S. 697, 24 L. Ed. 542.

Appellants insist that the instruction requested by respondent was erroneous and properly refused, contending (1) that the deceased was a passenger to whom respondent owed the highest degree of care, and (2) that being a passenger he was entitled, in going to the train, to presume that he could do so with safety, and that, in view of such relation and conditions, it was for the jury to determine whether he was negligent in failing to stop and look or listen for the approaching train.

It may be conceded that it is not always necessary for one to have actually boarded a train, or to have even purchased a ticket before becoming a passenger. The deceased could not purchase a ticket, there being no ticket office or agent at Frisco. Unquestionably he intended to become a passenger, but did he occupy such an attitude relative to the respondent as to make him one? We hold that, under the facts shown, he did not. He had not, within a reasonable time prior to the arrival of the train, which he intended to take, placed himself upon the platform provided for his use, so that he might be looked upon as a passenger and accepted as such by the respondent. In *Chicago etc. R. Co. v. Jennings*, 190 Ill. 478, 60 N. E. 818, 54 L. R. A. 827, the court said:

"It is not necessary, to create the relation, that the passenger should have entered a train, but if he is at the place provided for passengers, such as the waiting room or platform at the station, with the intention of taking passage and has a ticket, he is entitled to all the rights and privileges of a passenger. A railroad company owes a general duty to receive and carry those who present themselves at the time and place provided for passengers requiring transportation. . . . When the passenger has presented himself at the proper place to be transported, his right to care and protection begins. Cooley, Torts, 653. But it is uniformly held that the passenger must have placed himself under the care of the railroad company, so that the circumstances will warrant an understanding on the part of the company that he is a passenger and under its care as such. . . . Since a railroad company owes the duty of protection to its passengers, it seems plain that the circumstances must be such that the company will understand that such a person is a passenger in its care and entitled to its protection. The company certainly has a right to know that the relation and duty exist, and the passenger must be at some place provided by the company for passengers, or some place occupied or used by them in waiting for or getting on or off trains. Whenever a person goes into such a place with the intention of taking passage, he may fairly expect that the company will understand that he is a passenger and protect him. If he could be a passenger before reaching such a place, there would be no limit or place where

it could be said that he became a passenger. The intention of taking a train would only prove a purpose to enter into the contract relation, but would not create it. Any person walking towards a train on a public sidewalk might have no intention whatever of taking the train, but might have an intention to keep on along the street. So long as a person merely intends to be carried, but has not reached any place provided for passengers or used for their accommodation, he is not a passenger."

See, also, 3 Thompson, Commentaries on Law of Negligence, § 2641; *Webster v. Fitchburg R. Co.*, 161 Mass. 298, 37 N. E. 165, 24 L. R. A. 521; *June v. Boston etc. R. Co.*, 153 Mass. 79, 26 N. E. 238; *Southern R. Co. v. Smith*, 86 Fed. 292, 40 L. R. A. 746; *Fremont etc. R. Co. v. Hagblad*, 72 Neb. 773, 101 N. W. 1033, 106 N. W. 1041.

But assuming that Mr. Wright was a passenger, such relation would not release him from every obligation to care for his own safety, nor would it permit him to deliberately step in front of a moving train without being guilty of negligence. The appellants in substance contend, that a passenger in going to or from his train may cross intervening tracks, without looking or listening, and not be held guilty of contributory negligence as a matter of law; that being a passenger he is entitled to presume the railroad company has provided for his protection and safety from passing trains, and that under such circumstances the question of his negligence in failing to look or listen, can only be determined by the jury. In support of this position they cite, with other cases, the following authorities: *Texas & Pac. R. Co. v. Gentry*, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186; *Illinois Central R. Co. v. Proctor*, 28 Ky. Law 598, 89 S. W. 714; *Betts v. Lehigh Valley R. Co.*, 191 Pa. St. 575, 43 Atl. 362, 45 L. R. A. 261; *Atlantic City R. Co. v. Goodin*, 62 N. J. L. 394, 72 Am. St. 652, 45 L. R. A. 671; *Redhing v. Central R. Co.*, 68 N. J. L. 641, 54 Atl. 431; *Atchinson etc. R. Co. v. Shean*, 18 Colo. 368, 33 Pac. 108, 20 L. R. A. 729; *Louisville etc. R. Co. v. Hirsch*, 69 Miss. 126, 13 South. 244. These cases are not ap-

plicable to the facts before us. While in some of them passengers were injured and held not guilty of contributory negligence as a matter of law, it appears that they were going to or from trains on which they intended to travel or had been traveling; that in doing so they crossed intervening tracks, for instance, between themselves and the station, and that they were struck by other trains passing on such intervening tracks.

We have examined every case cited by appellants and find that no one of them relates to a person who, not having presented himself at the company's platform or depot as a passenger, was injured by passing in front of the identical train upon which he intended to travel, doing so as it was approaching the station and arriving at its stopping place. Railroads cannot accept and transport travelers without providing moving trains which must approach and depart from stations where passengers are received. If an intending passenger who has not presented himself on the railway platform can pass directly in front of the identical train upon which he expects to travel, doing so as it arrives at a station, and not be guilty of contributory negligence, it would be difficult to understand what acts would constitute such negligence. Under the undisputed facts of this case, we hold that the deceased was not a passenger, and that he was guilty of contributory negligence as a matter of law.

The order granting a new trial is affirmed.

MOUNT, J., concurs.

RUDKIN, J. (concurring)—I concur in the judgment of affirmance, but not in the construction placed on the final record made up in the court below by the opinion of Mr. Justice Crow. This court cannot review an order granting a new trial for error in instructions unless the record affirmatively shows that the new trial was granted on that ground and no other. It seems to me the record before us fairly shows that the new trial in this case was granted on the entire

record, and not for error in the instructions alone. The court below in the exercise of sound judicial discretion might well have granted a new trial for excessive damages appearing to have been given under the influence of passion or prejudice, or for insufficiency of the evidence to justify the verdict, and for aught that appears in this record did so.

Fullerton, J.—I concur in the result for the reasons stated by Judge Rudkin.

Hadley, C. J. and Root, J., dissent.

Dunbar, J., took no part.