[No. 8203.   Department Two.   November 13, 1909.]

## MORES AVERBUCH, *Respondent*, v. GREAT NORTHERN RAILWAY COMPANY *et al.*, *Appellants*.[1]

RAILROADS—ACCIDENT AT CROSSING—LOOK AND LISTEN—CONTRIBU-
TORY NEGLIGENCE—QUESTION FOR JURY.  The evidence does not show
as a matter of law that plaintiff, injured at a railroad crossing,
could have seen an approaching engine if he had looked, from the
fact that photographs, taken long after the accident, and other evi-
dence of the defendant so indicates, where there was a sharp conflict
in the evidence on that point, disinterested witnesses at the time of
the accident supported plaintiff's contention that obstacles cut off
his view, and the jury, after a view of the premises, found for the
plaintiff.

SAME—EVIDENCE—SUFFICIENCY.  The plaintiff, injured while driv-
ing a delivery wagon across two railroad tracks, is not guilty of neg-
ligence in not stopping a second time to look and listen after he got
onto the tracks, where it appears that he stopped as near the tracks
as possible and looked and could see or hear no train, whistle, or
bell, that he could see a distance of 175 to 250 feet down the track,
and had but 35 or 40 feet to drive; that he was driving at about
4 miles an hour, and if the engine had not exceeded the speed limit
of six miles, he could have crossed in safety, and could have heard
a signal had one been given by an engine within striking distance.

SAME—TRIAL—INSTRUCTIONS.  An instruction is not objectionable
as stating that the pleadings admitted that obstructions obscured
the view down a railroad track, where it simply stated that it was
admitted that the tracks crossed a street used by the public, and that
the crossing was dangerous because of its proximity to business
interests.

APPEAL AND ERROR—REVIEW—HARMLESS ERROR—TRIAL—INSTRUC-
TIONS.  In an action against a railroad company and its engineer, to
recover for personal injuries sustained at a railroad crossing, it is
not prejudicial to give an instruction to the effect that both defend-
ants would be liable for any negligence by the engineer, where there
was no question of any negligence except that of the engineer in
running the company's engine over the crossing.

TRIAL—INSTRUCTIONS—HARMLESS EXPRESSIONS.  It is not preju-
dicial error, that in directing the form of the verdict, the court inad-
vertently started to say what the form should be if the jury should
"happen" to find for a party, where the remark was immediately
corrected.

[1]Reported in 104 Pac. 1103.

SAME—REQUESTS—FORM OF INSTRUCTIONS. A party is not entitled to an instruction in any particular form of words, where its substance is given.

Appeal from a judgment of the superior court for King county, Gay, J., entered April 8, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained at a railroad crossing. Affirmed.

*F. V. Brown* and *Frederic G. Dorety*, for appellants.

*Robert H. Evans* and *William Parmerlee*, for respondent.

DUNBAR, J.—This is a personal injury case. The plaintiff was thrown from his wagon by a locomotive of the defendant railway company, and injured, on the 29th day of September, 1908, upon a public highway crossing one of defendant's tracks. The above action was brought to recover damages for injury against the railway company and the defendant E. P. Sheerer, who was engineer in charge of the engine. The case was tried to a jury, and verdict rendered in favor of the plaintiff in the sum of $2,683. A challenge by the defendants to the sufficiency of the plaintiff's evidence, at the close of plaintiff's case and at the close of all the evidence, was overruled. A motion for judgment notwithstanding the verdict was denied. Judgment was entered, and appeal followed.

The jury and the court viewed the premises where the accident happened. Averbuch, respondent, and the witness Boyce, who chanced to be in the wagon with him, were driving along in the alley leading from Broad to Eagle street, in an ordinary delivery wagon with a cover on it, which, as the testimony shows, came even at the side with the front of the seat. There was some other testimony in relation to this wagon, but we think that the jury could rightly conclude from the testimony that such was its condition. The wagon was drawn by a single horse. The railway tracks at the point where the accident occurred run northerly and southerly along the water front or trestle, which is partly planked over. Fifty

feet or so further out in the water is a planked roadway, also running northerly and southerly, and parallel with the railway tracks. Eagle street runs down to the shore line, and crosses the bridge upon which the tracks lie at right angles, continuing westerly over a short bridge to the planked roadway just mentioned.

Both the Great Northern and Northern Pacific companies have main track lines at this point, the Great Northern track being on the west nearest to the water, and the Northern Pacific track being east of the Great Northern and on the land side. A Northern Pacific switch or spur track joins the Northern Pacific main track at Eagle street, and runs south, lying east of the Northern Pacific main track and on the opposite side from the Great Northern. The extremity of the switch is near the northerly edge of Eagle street, and the frog near the southerly edge. Eagle street is planked across the entire right of way. There are sixteen or seventeen feet in the clear between the two main tracks.

When respondent reached a point within two or three feet of the planking, and within six or seven feet of the Northern Pacific track, he stopped the wagon and, before attempting to go over the crossing, looked both north and south along the tracks for any train that might be passing. Previous to this, his view had been obstructed by buildings, sheds, etc. According to his testimony, not seeing or hearing any engine approaching, he drove on to the track, passed over the Northern Pacific track, and when his horse's feet were up on the Great Northern track between the rails, the engine rushed on to him and did the damage complained of.

On the merits of the case, the appellants make two contentions: (1) that the respondent could easily have protected himself by looking south after reaching the planking; (2) that the fact that he stopped and looked when he did, and when his view was obstructed, was no excuse for his failing to look when on the planking, and is not a sufficient compliance with the law to make the question of his negligence one

for the jury; and it is contended that, where it is certain
from the physical situation that the plaintiff must have seen
the engine if he stopped to look, the jury will not be per-
mitted to believe his statement that he did stop and look but
did not see the engine.

This contention, as an abstract proposition, is undoubt-
edly true, but in this case it probably assumes a fact which,
under competent testimony, the jury must determine, viz.,
do the physical facts show that the plaintiff could have seen
if he had looked. It is also doubtless true, as learned counsel
argues, that the stop, look and listen phraseology is fre-
quently considered too literally or too mechanically. The
rule is not intended to be a formula, or its mechanical ob-
servance an excuse for negligence or heedless action. Com-
mon observation has taught us that a railroad track is a
signal or notice of danger, and the courts have almost uni-
versally said that it is such a notice as would put a prudent
man on guard, and that when he receives this notice his duty
is to stop, look and listen before venturing on to the track;
or that he must act as an ordinarily prudent man would act
under like circumstances if dangers of other kinds were
threatening him. That is all there is to the doctrine; and,
of course, it will not clear him of the charge of negligence,
if he looks and listens only where such acts are unavailing
and senseless. On the other hand, the rule is not intended
to prohibit recovery under all circumstances where a person
is run down on a railroad track, as would be the case if ap-
pellant's theory were carried to its logical conclusion; which
would be to the effect that an engine appearing on the track
shortly after he looked would be conclusive proof that he did
not look, or that if he did look, he either saw it or did not
look from the proper place, and was therefore negligent.

So that the practical question remains, do the established
facts of this case bring it within the modified rule contended
for by counsel, and within the many cases cited to sustain
the rule. By "established facts," is meant questions of fact

which are passed upon by the jury under competent testimony and correct instructions. The respondent testified that he could see down the track from where he stopped to look two hundred and fifty or three hundred feet; that he could not see further by reason of his view being obstructed by box cars, coal sheds, and other structures. Respondent's witness Boyce, who was in the wagon with him at the time of the accident, and who seems to be a very intelligent witness and a man of considerable experience with railroads and engines, and entirely disinterested, testified that he could see one hundred and seventy-five feet south, and also testified as to the obstructions to further view on the track. Another witness testified that he went along in a wagon over the same road traveled by the respondent, and passed the place where the accident occurred, the next morning after the accident; that he noticed particularly and that the respondent could not have seen the distance it was claimed by the appellant that he could have seen when he claims that he looked. His testimony confirmed the testimony of Boyce, and was positive and convincing. Other testimony was to the same effect.

The defense offered testimony exactly to the contrary, tending to show that there were no obstacles to a longer view, and that respondent could have seen the approaching engine, or at least the top of it, if he had looked where he claims he looked, introducing photographs and other technical proof to substantiate this claim. So far as the photographs are concerned, there is no showing when they were taken, the only testimony being that it was not within a short time after the accident, but that, in the language of the witness, "it was a long time after." It is not conceded that the conditions were the same except that they showed the general plan. The seeming view as shown by the photographs under the circumstances should not outweigh the direct and positive testimony of witnesses who say that they saw certain obstructions to the view on the track at the time of the accident; and this view of the case was appreciated by

learned counsel for appellants in the trial of the cause, who, in urging a view of the premises, said:

"We are very anxious to have the jury view the premises before this case is over. There will be a sharp issue in the case as to how far down this track a person standing on the crossing could see and while these photographs are enlightening they are not like seeing the place itself. I should like to have both the court and the jury view the premises."

The conflict in the testimony was sharply drawn by witnesses whose integrity was not assailed, and who, with the exception of the respondent, were evidently entirely disinterested. So that, instead of its being established that the physical facts show that the respondent could have seen the approaching engine from the point where he says he looked, it must be considered an established fact in the case that he could not have seen it; especially in view of the fact that the premises were viewed by both judge and jury, that the place of the accident was pointed out to them under the instructions of the court, that they could see the whole situation and pass upon the credibility and reasonableness of the witnesses, aided by this knowledge of the situation. This applies to the judge who refused the challenge to the sufficiency of the evidence, as well as to the jury.

For the same reason it must be considered an established fact in this case, that the ordinance of the city prohibited a speed of the engine in question, at the place in question, greater than six miles an hour; that the engine was in fact running from seventeen to twenty miles an hour; that the appellants were backing the engine, and that the engineer's view of the track was completely shut off by the tender; that the bells and whistles of the locomotive were not sounded; and as tending to show the rate at which the engine was running, that it did not stop until it reached a distance of one hundred and thirty or forty feet beyond where it struck the wagon, the fireman and engineer discovering the situation of the respondent about seventy-five feet before it reached him.

The other proposition of the appellants, viz., that the re-

spondent was guilty of negligence in not looking after he got up onto the tracks, is the only question that is left in the case. It may be conceded that the respondent stopped at a proper place to look and listen in the first instance. To reach safety he only had to drive between thirty-five and forty feet from the place where he stopped to look, to clear the tracks altogether. He stopped as near as he could to the tracks when he came to them, and he testified that he could see a distance of two hundred or two hundred and fifty feet down the Great Northern track. While it is contended that he should have stopped after he got onto the tracks, to listen, it is a matter of common knowledge that stopping a wagon on a railroad track is a very dangerous proceeding. So far as respondent knew, there was as much danger in the first track that he was crossing as there would be in the second or third. He made his observation from as near a point as he could make it before he went onto the track, and when he went onto the track it would be a natural and prudent impulse to hurry over the tracks at as rapid a speed as possible, especially where the distance was so short. He had listened for the bells and signals. He had been looking for the approach of the engine. There was just as much danger of an approach from the north side, where he said he was looking when the engine overtook him, as there was from the south side; and while the respondent was looking to the north, his fellow passenger was looking to the south, as they passed over this dangerous piece of ground. After he had looked to the north and saw no train coming, he turned his attention to the south, but it was then too late.

The only question is whether he should have stopped a second time to look and listen after stopping where he did in the first instance. This question must be answered by a consideration of all the facts in the case. The claim of the appellants that respondent had shut himself up in his wagon or hack where he could not see is not substantiated by the testimony, the respondent testifying that he could see by

leaning forward slightly. The wagon seems to be the ordinary wagon that is driven by deliverymen in this country. According to respondent's testimony, the wagon was going from three to five miles an hour. According to the testimony of others, from four to five miles an hour. Accepting four miles as probably a correct estimate of the distance per hour it was traveling, he would be justified in concluding that, if the engine or train was approaching at the rate of six miles an hour, and conceding that he could only see one hundred and seventy-five feet south on the track, he would travel one hundred and sixteen feet while the engine would be traveling one hundred and seventy-five feet; and under such calculation as this, he would be justified in concluding that he would have plenty of time in which to get across the track, which he would have had. Again, he would have been justified in concluding that there was no engine within that distance of him, because if there had been, he testified that he could have heard the bells and whistles which the law provided for. So that, under the circumstances of the case, we think he was justified in hurrying over the track after he had once entered upon it, and he was doing all that a driver of a vehicle could be expected to do under the circumstances, by guiding his horse across these railroad tracks and looking as well as he could for danger from one side to the other, while the same time engaged in giving that attention to his horse which was necessary for him to give.

The appellants cite several cases on this proposition, and many are cited also by the respondent. Included in those cited by appellants are several from this jurisdiction, viz: *Cable v. Spokane & Inland R. Co.*, 50 Wash. 619, 97 Pac. 744; *Ladouceur v. Northern Pac. R. Co.*, 4 Wash. 38, 29 Pac. 942; *Baker v. Tacoma Eastern R. Co.*, 44 Wash. 575, 87 Pac. 826; *Anson v. Northern Pac. R. Co.*, 45 Wash. 92, 88 Pac. 1058, and *Gregg v. Northern Pac. R. Co.*, 49 Wash. 183, 94 Pac. 911. But all cases of this character must of necessity be brought under different states of facts, every

case to a great extent being determined by the particular facts of that case.

In *Cable v. Spokane & Inland Empire R. Co., supra,* the plaintiffs did not stop before crossing the railway track. They said they had looked before they got to the track. Their mistake was that they thought that the train which they heard approaching was a local train which would stop at the station, and therefore they thought they would be safe in driving on to the track below the station. This court in that case said: "These people did not stop before crossing the railway track. Had they done so shortly before reaching the crossing, they could plainly have seen and heard the approaching train." In this case it will be seen that the respondent did exactly what the court in that case criticised the plaintiffs for not doing. The court continuing says: "If they looked or listened, it was not at a time or place where looking or listening revealed to them the true condition of affairs." In this case, the looking or listening would have revealed to the respondent the true condition of affairs, if the appellants had been complying with the law, which the respondent had a right to suppose they would comply with. We think the case is not in point.

And so in the case of *Ladouceur v. Northern Pac. R. Co., supra.* There the court had taken the case from the jury on the theory that the plaintiff had been guilty of contributory negligence in driving on to a track under the circumstances which he did, and this court reversed the case and sent it back with instructions to submit the case to the jury. The only comfort that appellants can derive from that case is that their contention was sustained by the dissenting opinion. The other cases cited are not of this character, and have no bearing that we can see upon the facts of this case. So that, so far as appellants' motions are concerned, the court did not err in overruling them.

As to instructions given and refused: The first, second,

third, fourth, fifth, and sixth errors assigned under this head have been disposed of in what we have said on the merits of the case. Concerning the seventh assignment, it is claimed that the court erred in instructing the jury to the effect that paragraph two of the complaint states that said street is much traveled and used by the public and by teams and pedestrians, and at a point where such railway tracks of defendant cross the same, said street was so used by the public on the 29th day of September, 1908; that as one approached the railway crossing on said street on the east, the view of defendants' tracks to the south was obstructed by numerous buildings, structures and coal bunkers; that on the said 29th day of September, 1908, there were numerous box cars lying on said tracks, which with the other structures situated close to said track further obstructed plaintiff's view of said track to the south; and that said paragraph two of the complaint was admitted in defendants' answer, except the allegation of the same being dangerous, which was denied; and it is asserted by counsel that this instruction was wrong for the reason that many of the allegations are denied, viz., that there was a direct issue on the question of the obstruction; that there was no evidence whatever that the street was much traveled by teams and pedestrians, etc. The trouble with this assignment is that it assumes that the court made instructions which it did not intend to make, and in fact did not make. The instruction which is pertinent to the objection is as follows:

"It is further alleged that among the public streets south of said Denny Way and north of said Hanford street, as regulated by said ordinance, is a certain street known as Eagle street, and that the defendant crosses and passes over the surface of said Eagle street; that the said Eagle street is a public thoroughfare and that there are other railroad tracks thereupon, and that the said Eagle street, because of its proximity to business interests, is dangerous. Now, all this is admitted in the defendants' answer, except the allegation of the same being dangerous, which is denied."

So that the court, in telling the jury what portion of the second allegation of the complaint was admitted, did not tell it that the allegations that the track were obstructed or that the street was much traveled by teams and pedestrians was admitted by the answer. But it could only be gathered from such instruction that it was admitted by the answer that there was a certain street known as Eagle street; that the defendant crosses and passes over the surface of said Eagle street; that Eagle street is a public thoroughfare; and that there are other railroad tracks thereupon. These propositions were certainly not denied, and were not in issue in any manner in the trial of the cause.

The court instructed the jury that:

"Should you find . . . that the defendant company through any of its agents, and particularly the defendant Sheerer, . . . drove upon the plaintiff and injured him in the manner and form alleged in the complaint, then I charge you that such act would be negligence for which the defendants and each of them would be held to respond in damages in a sum not to exceed $7,533."

The reverse of this instruction was refused by the court. Conceding that this instruction was wrong, as applied to defendant Sheerer, it is not every wrongful instruction which will warrant a reversal of a cause. If it appears that the error was not prejudicial, the judgment will not be reversed, and neither of the defendants in this case could have been prejudiced by this instruction, for there was no question of negligence in the case excepting the negligence of the engineer. While it is true there was some testimony in relation to the position of the fireman at the time, and just before the time, when this accident occurred, it was conceded that the train was under the supervision and control of the engineer, and that the fireman was under his direct supervision and control so far as any of the issues in this case are concerned.

Assignment nine is that the court erred in instructing the jury that it was agreed by the attorneys in the case that the jury might see the location of the accident. In view of what

the record shows, this assignment is entirely without merit.

The tenth assignment is that the court erred in its instruction to the jury in using the phrase "if your verdict should happen to be for the defendants." This is not an exact statement of what the record shows. The statement of the court in that regard was as follows: "If your verdict should happen to be—if your verdict should be for the defendant company and Mr. Sheerer, you will just have your foreman sign," etc. In this connection the court was instructing the jury as to the form of its verdict. The court evidently discovered in dictating this instruction that it had probably used an unfortunate word, and corrected it by the unqualified remark, "if your verdict should be for the defendant company." It is a trifling objection at best, and if appellate courts should indulge in reversing judgments for every little slip of the tongue of a trial judge, or awkward or inapt expression that he might use, instead of aiding in the administration of justice, they would thwart its aim.

The other instructions given by the court and which are objected to properly stated the law, and the instructions asked and refused were either given in substance by the court or did not properly state the law, and it has been held by this court too many times to call for a repetition, that a party litigant is not entitled to an instruction in any particular form of words. An illustration of the contention so often made in this respect may be found in this record under assignment 16, which is to the effect that the court erred in refusing to give appellants' requested instruction No. 7, which reads as follows:

"You are instructed that a railroad track is in itself a signal of danger and that it is the duty of a person about to cross such a track to stop, look and listen for any approaching engine or train, where it will do any good, before going on the track. The law imposes this as a duty upon travelers crossing a railroad track, and if the plaintiff in this case failed to take these precautions, and if he could have seen or heard the defendant railway company's engine,

but failed to look and listen for it, he was guilty of negligence as a matter of law, and cannot recover for any injuries which he may have received, no matter how negligent the railway company may have been. If you believe that the plaintiff could not have seen the engine, but could have heard it; or if he could not have heard the engine, but could have seen it, and that he failed to make the attempt, then your verdict must be for the defendants."

The instruction given by the court on this branch of the case was as follows:

"I now charge you as the positive law well established in this state, that before a driver of horses, the plaintiff in this case, can cross a railroad track on a public street or highway, that it is his positive duty to know and realize that railroad crossings are a place of danger, and it is his duty to stop and look and listen for approaching trains or engines, and, if a train is approaching, to wait until such train or engine shall have passed, and if he fails to do this and comes into collision and an accident occurs, it is in law contributory negligence on his part and he has no cause for damages which can be maintained in any of the courts of this state against the defendant, no matter at what rate of speed the defendant company shall be driving its engine or cars, notwithstanding the ordinance hereinbefore mentioned and admitted in the pleadings. If you are in doubt respecting the matter that the plaintiff did stop, look and listen for approaching trains and engines and used the ordinary prudential care at the time of the accident, then I instruct you that your verdict should be for the defendant company and Sheerer and against the plaintiff."

Further comment on this assignment seems to be unnecessary.

There appearing to be no prejudicial error in the case, the judgment is affirmed.

RUDKIN, C. J., MOUNT, PARKER, and CROW, JJ., concur.